186 P.3d 654

**Pamela RAE, Plaintiff–Appellant,**

v.

**John L. BUNCE, Jr., and Stanley W. Welsh, Defendants–Respondents.**

**No. 33996.**

Supreme Court of Idaho, Boise, May 2008 Term.

June 6, 2008.

Herzfeld & Piotrowski, Boise, for appellant.

Cosho Humphrey, LLP, Boise, for respondents.

EISMANN, Chief Justice.

This is an appeal from a judgment dismissing an action seeking to set aside an order modifying the custody provisions of a divorce decree for alleged fraud upon the court and awarding attorney fees pursuant to Idaho Code § 12–121. We affirm the judgment of the district court and award attorney fees on appeal.

## I. FACTS AND PROCEDURAL HISTORY

### Child Custody Proceedings

John Bunce (Dad) and Pamela Rae (Mom) were married on October 5, 1985, and during their marriage they had four children: Kelsey, Devon, Wyatt, and Josephine. In 1995, after the children were born, the family moved from the Bay Area in California to Idaho, but Dad commuted to San Francisco for work each week.

On March 5, 1997, Dad and Mom separated, and Mom filed a divorce action in California. In September 1998, the parties entered into an agreement resolving custody of their

children. Mom was given primary physical custody and Dad was given specified periods of time when he would have physical custody. The divorce decree in the California action was ultimately entered on January 8, 1999.

In July 2000, Mom filed the California judgment in Idaho, seeking to establish it as an Idaho judgment pursuant to the Enforcement of Foreign Judgments Act, Idaho Code §§ 10–1301 et seq., and she filed a motion to modify custody. She obtained an ex parte restraining order preventing Dad from exercising visitation with their daughter Josephine. After a hearing, the restraining order was quashed and the petition to modify custody was dismissed on the ground that the Idaho court lacked jurisdiction under the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act, I.C. §§ 32–11–101 et seq., because of the California court's exclusive, continuing jurisdiction. Mom still refused to permit Dad to exercise visitation with Josephine, and Dad had to obtain an order from the California court in order to do so.

In June 2002, Dad relocated to Blaine County, Idaho, the same county in which Mom resided with the children. The parties continued litigating custody issues in California. Pursuant to their stipulation, an Idaho attorney was appointed by the California court as a special master and was given authority over various custodial issues. Between January 9 and August 29, 2003, the California court entered six orders based upon reports from the special master attempting to resolve the parties' ongoing conflicts regarding custody and visitation.

In July, 2003, Dad learned that Mom had moved back to California. On August 1, 2003, he filed a motion in Blaine County seeking an ex parte interim custody order to keep the children in Idaho. The court refused to grant the motion on the ground that California still had exclusive jurisdiction. Four days after Dad had enrolled the children in school in Blaine County, Mom surreptitiously took them to California and attempted to enroll them in school there. After some legal wrangling, the children were returned to Idaho.

The special master issued a final report making recommendations for an order to resolve the remaining disputes between the parties. On October 8, 2003, the judge who had presided over the parties' divorce action in California entered an order relinquishing jurisdiction over the children. On October 23, 2003, Dad instituted the Idaho custody proceedings by filing a motion in the Idaho court to implement the visitation schedule recommended by the special master. One week later, Mom filed a motion seeking to implement her proposed visitation schedule, based upon her move to California.

The Idaho custody proceedings were tried in August 2004. After closing arguments, the trial court on August 25, 2004, orally ruled that the children would reside primarily with Dad in Blaine County, Idaho. The court also asked the parties to submit their proposed visitation schedule and argument on child support before September 24, 2004.

On August 28, 2004, the parties' sixteen-year-old daughter, Devon, was scheduled to fly back to Idaho. Mom had Devon rebooked on a flight to Los Angeles, where Mom picked her up and took her to Malibu. On September 1, 2004, through her counsel, Mom filed a motion asking the court to reconsider custody. She supported the motion with her affidavit in which she stated, "She [Devon] refuses to return to Ketchum, Idaho. I refuse to force her to return to Ketchum, Idaho."

On September 1, 2004, the court entered an order requiring Mom to return Devon to Dad's physical custody by 5:00 p.m. the following day. The order also provided that a separate order would follow the next day. The separate order entered on September 2, 2004, awarded sole physical and legal custody of the children to Dad pending further order of the court, denied Mom's motion to reconsider, and stated that "it is absolutely clear to this Court that [Mom] will not abide by orders of this Court." The court noted that Mom's statement in her affidavit that she will not force Devon to return to Idaho was direct proof that she would refuse to follow the court's orders. Dad filed contempt proceedings against Mom, but later withdrew them because Mom intended to call Devon as a

witness and Dad wanted to avoid any further trauma to her.

On November 29, 2004, the court issued its memorandum decision in the custody proceedings. The parties' oldest daughter, Kelsey, was at that time enrolled in school in Colorado, and in less than five months she would attain the age of majority. She wanted to complete her schooling in Colorado. Dad approved, but Mom did not. The court found it would be in Kelsey's best interests to complete her schooling in Colorado. It ordered that both parties would continue to have joint custody of Kelsey, but they must honor her wishes regarding parental contact. With respect to Devon, Wyatt, and Josephine, the court awarded Dad their primary physical custody, with Mom having specified periods of visitation. On December 27, 2004, the court entered an order amending the child custody provisions of the divorce decree in accordance with the memorandum decision.

### Independent Action to Set Aside Judgment

On September 1, 2005, Mom filed this action *pro se*, seeking to set aside all orders entered in the custody action during the period from September 2004 through January 2005, because of alleged fraud upon the court. Those orders were: the order entered on September 1, 2004, ordering Mom to return Devon to Dad's custody; the order entered on September 2, 2004, awarding Dad sole legal and physical custody of the children until further order of the court; the memorandum opinion and order entered on November 29, 2004; and the order filed December 27, 2004, amending the child custody provisions of the divorce decree. Mom named as defendants Dad and his attorney, Stanley Welsh. On September 26, 2005, Mom retained counsel to represent her in this action. Five months later her attorney was suspended from practicing law, and Mom then retained her current attorney.

Because Mom has abandoned on appeal some of the allegations she made in the trial court, her specific allegations of fraud upon the court will be discussed in more detail in the analysis portion of this opinion. The

district court granted the Defendants' motion for summary judgment and dismissed this action. It also awarded Dad attorney fees in the sum of $9,840.28 pursuant to Idaho Code § 12–121. Mom then timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in granting the Defendants' motion for summary judgment?

2. Did the district court err in awarding Dad attorney fees pursuant to Idaho Code § 12–121?

3. Is Dad entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12–121?

## III. ANALYSIS

### A. Did the District Court Err in Granting the Defendants' Motion for Summary Judgment?

Rule 60(b) of the Idaho Rules of Civil Procedure recognizes that courts have the inherent power "to set aside a judgment for fraud upon the court." "The term 'fraud upon the court' contemplates more than interparty misconduct, and, in Idaho, has been held to require more than perjury or misrepresentation by a party or witness." *Compton v. Compton,* 101 Idaho 328, 334, 612 P.2d 1175, 1181 (1980). It "will be found only in the presence of such 'tampering with the administration of justice' as to suggest 'a wrong against the institutions set up to protect and safeguard the public.'" *Id.* (quoting *Hazel–Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250, 1255–56 (1944)). "The party asserting a claim of fraud on the court must establish that an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense." 47 Am.Jur.2d, *Judgments* § 728 (2006).

The judgment at issue in this case is the order entered on December 27, 2004, which amended the child custody provisions of the divorce decree in accordance with the memorandum decision. The prior orders in the child custody proceeding, including the order

entered on September 1, 2004, were interlocutory orders, not judgments. Therefore, Mom must show there was fraud upon the court that would justify setting aside the order entered on December 27, 2004. On appeal, Mom bases her claim of fraud upon the court upon the circumstances surrounding the issuance of the order entered on September 1, 2004, and upon Dad's withdrawal of his motion seeking to hold Mom in contempt. She must show not only that there was fraud upon the court with respect to those two events, but she must also show that it justifies setting aside the judgment later entered on December 27, 2004.

**The order entered September 1, 2004.** After the two and one-half day trial in the custody proceedings, Mom's attorney Dana Monson sent the judge a letter dated August 27, 2004. In the letter, which was faxed to Mr. Welsh, she stated that they had a disagreement as to whether the judge had stated after the trial that Mom could have the children in her custody until school began. She asked the judge to clarify that matter. Thereafter, there were a series of letters to the judge from Mr. Welsh and Ms. Monson regarding the issue and Dad's alleged inability to contact Devon while she was at her Mom's. In her letter to the judge dated August 31, 2004, Ms. Monson concluded by writing:

> Finally, as mentioned at trial, I will be out of town and unavailable beginning late tomorrow until September 13, 2004. Although I have Doug Werth cover in my absence, I am not certain if he will be covering on this matter. Rather, I believe Ms. Rae may have other counsel. She will, through such person, inform the Court and Mr. Welsh of such representation as necessitated.

Mom had been permitted to exercise visitation with Devon until she was to start school. On September 1, 2004, Mr. Welsh sent a letter to the judge, with a copy to Ms. Monson, stating that Devon's school orientation would be on Friday, September 3, 2004, and asking the judge to sign a proposed order requiring Mom to have Devon back in Dad's custody in Blaine County by 5:00 p.m. on Thursday, September 2, 2004, so that she could attend that orientation. The judge issued the proposed order on September 1, 2004, at 4:28 p.m. and wrote on it, "Separate order to follow by fax on 9/2/04." Copies of the order were faxed to Mr. Welsh, Ms. Monson, and Mr. Werth.

On September 1, 2004, at 4:30 p.m. Mom filed a motion for reconsideration and her supporting affidavit explaining in detail why Devon should be allowed to remain with Mom in Malibu. In her affidavit, Mom stated, "She [Devon] refuses to return to Ketchum, Idaho. I refuse to force her to return to Ketchum, Idaho."

On September 2, 2004, the judge *sua sponte* without a hearing issued an order denying Mom's motion for reconsideration and granting Dad sole legal and physical custody of Devon, Wyatt, and Josie. In the order, the judge wrote the following:

> At the conclusion of trial, the Court sought the assistance of the parties in attempting to work out a visitation arrangement. It is apparent from the correspondence received from counsel that the communication and cooperation level of the parties in this case continues to be nonexistent. It is also absolutely clear to this Court that Pamela Rae will not abide by orders of this Court. The statement contained in paragraph 5 of Ms. Rae's latest affidavit stating that "I refuse to force her [Devon] to return to Ketchum, Idaho" is direct proof that she will refuse to follow the order of this Court. Despite this Court's *clear* order that Devon shall reside with her father, Ms. Rae declines to accept her responsibility as a parent by stating that she will not support this Court's decision. She has been held in contempt of court in California twice, and sanctioned by this Court. It is clear to this judge that she will do what she wants because *she* alone thinks she knows what is best for her children. This Court has ordered that Devon will reside in Blaine County and attend school there.
>
> In this final memorandum opinion, this Court will address how Pamela Rae has attempted to influence the decisions of these children. While this Court does not

consider it inappropriate for a parent to solicit the opinion of children as to where they wish to reside, the children's decision is not controlling. Pamela Rae thinks otherwise. She is wrong. This Court finds that Pamela Rae's representations as to what the children want is not credible evidence given the totality of the evidence this Court heard at trial. Pursuant to Rule 7(b)(3) *I.R.C.P.* the Court in its discretion declines to hear oral argument or receive additional evidence on this issue. (Parenthetical and emphasis in original.)

Dad ultimately had to initiate proceedings in California to obtain the return of Devon.

Mom contends that this constituted fraud upon the court because Mr. Welsh submitted the proposed order by a letter rather than by a motion and because he did so when he knew Ms. Monson would be out of town and would not receive the copies he mailed her. Mom's argument that this constitutes fraud upon the court is ridiculous. She cannot explain how submitting a proposed order by letter rather than by motion prevented her from fully and fairly presenting her case. Likewise, mailing a letter to counsel who had stated there would be someone covering in her absence does not even come close to constituting fraud upon the court.

More importantly, Mom knew before September 1, 2004, that she was to have Devon back in Dad's custody in time for school. The court's order issued *sua sponte* on September 2, 2004, and its later memorandum decision and order modifying custody were influenced by Mom's recalcitrance, not by Mr. Welsh sending the proposed order by letter rather than by motion and mailing a copy to Ms. Monson when she was out of town. As the court stated in its September 2 order:

In light of Ms. Rae's unequivocal statement quoted above ["I refuse to force her [Devon] to return to Ketchum, Idaho"], this Court enters the following orders:

1) Pamela Rae's motion for reconsideration of the Court's oral ruling on August 25, 2004 is granted in part and denied in part. (2) This order supercedes [sic] all written and oral temporary orders issued

by the Blaine County Magistrate in this case.

It is hereby ordered:

. . . .

2) On August 25, 2004, Ms. Rae told this Court that her "schedule did not permit visitation with the children." Despite this, this Court believes that Ms. Rae arranged for Devon to go to Malibu, knowing full well that she did not intend to return her to Blaine County. Her pattern of conduct directly parallels her conduct during the "Josie incident" several years ago. This Court finds that Pamela Rae cannot be trusted to follow Court orders to return the children as required. Accordingly, Pamela Rae's physical visitation rights with Devon, Wyatt and Josie are suspended until further order of this Court. The Court also specifically orders that Pamela Rae shall have no *physical contact* with Devon, Wyatt or Josie pending further order of the Court. (Emphasis in original.)

Mom alleges, "The effect of Defendants Bunce's and Welsh's submission of a request for an order via letter was to deny Ms. Rae the opportunity to contest the motion and to ensure that Magistrate Stoker issued an order based purely upon Mr. Welsh's own representations." The only representations made by Mr. Welsh in his one-page letter that were relevant to the proposed order were:

I understand that Ms. Rae arranged for Devon to fly to Malibu. . . . .

In any event, I understand that Devon's school orientation is this Friday. For that reason and to avoid any dispute, I have enclosed herewith a proposed Order which I request the court sign so that Devon is returned for the orientation on Friday.

I would be happy to arrange for a phone conference with the court if the court so desires.

Mom does not contend that any of the above-quoted representations were untrue.

**The withdrawal of the motion for contempt.** On September 29, 2004, Dad filed a motion seeking to have Mom held in contempt of the order entered on September 2,

2004. He alleged that Mom had violated that order by enrolling Devon in school in California and by failing to return her to Dad's custody.[1] The motion for contempt was scheduled for hearing on October 22, 2004, but Dad later withdrew the motion when Mom stated that she would have Devon testify during the contempt proceedings. Mom contends that his withdrawal of the motion constitutes fraud upon the court because she was deprived of the opportunity to counter the inaccuracies contained in his supporting affidavits and because the judge in the custody proceedings may have read and relied upon the alleged inaccuracies when making the factual findings in his memorandum decision.

The motion for contempt alleged that Mom had violated court orders by enrolling Devon in school in California and by failing to return her to Dad's custody. In his memorandum decision, the judge in the custody proceedings wrote:

> Within one week following trial, an additional conflict arose between the parties. The extent of that conflict and the new issues raised between the parties is set forth in the Court's order dated September 2, 2004 and will not be repeated in detail herein. Suffice it to say that Pamela caused Devon to be taken to Malibu, California, apparently enrolled her in school there, and despite this Court's *direct* order to the contrary, refused to *return her to Jack's custody in Idaho.* This Court, on its own motion, summarily granted Jack interim sole legal and physical custody of all of the children and suspended Pamela's visitation with the children. (Emphasis in original.)

Mom cites this as an example of how the judge in the custody proceedings relied upon alleged misstatements by Dad and Mr. Welsh. Her attorney admitted during oral argument on the motion for summary judgment that Mom caused Devon to arrive in southern California and that she enrolled Devon in school there.[2] He stated that Mom only disputes that portion of the above quotation where the judge wrote that she "refused to return [Devon] to Jack's custody in Idaho." Mom argues that the judge must have relied upon misstatements by Dad and Mr. Welsh in making this finding and that Dad's withdrawal of his motion for contempt prevented her from disputing that finding.

The district court concluded from the record that the judge made this finding based upon Mom's conduct, not upon any alleged misstatement by Dad or Mr. Welsh. On September 2, 2004, the judge issued *sua sponte* an interim order on custody. The only information available to the judge at that time regarding Mom keeping Devon in Malibu was Mom's affidavit submitted in support of her motion for reconsideration. In that affidavit she explained why Devon should remain in Malibu and stated, "She refuses to return to Ketchum, Idaho. I refuse to force her to return to Ketchum, Idaho." As shown by the above-quoted portions of the September 2 order, the judge relied upon Mom's affidavit and prior conduct in concluding in that order that Mom had refused to return Devon to Jack's custody in Idaho.

Mom argues that even if there was no evidence showing that the judge in the custody proceedings relied upon any allegedly inaccurate information in Dad's affidavits, she is entitled to all reasonable inferences in her favor when defending a motion for summary judgment. She insists that for the purposes of summary judgment the district court in this case should have inferred that the judge in the custody proceedings relied upon alleged inaccuracies in Dad's affidavits submitted in support of the contempt motion rather

---

1. The September 2 order provided, among other things, that "Devon, Wyatt, and Josie ... are ... to attend school in Blaine County" and that "Devon shall be returned to Blaine County at Pamela Rae's expense."

2. During the oral argument, the following dialogue occurred:

> MR. PIOTROWSKI: On August 28 Devon boarded an airplane with a ticket that Ms. Rae had purchased to southern California. Yes, it's true that she caused her to arrive in southern California.
>
> THE COURT: Okay. And it's true, also, that she apparently enrolled her in school there?
>
> MR. PIOTROWSKI: She did, indeed, enroll her in school there.

than upon Mom's affidavit and prior conduct. In other words, Mom argues that the district court should have inferred that the judge in the custody proceedings misstated the basis of his findings.

■ This case would have been tried to the court, not to a jury. "When an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360–61, 93 P.3d 685, 691–92 (2004). The district judge was not required to draw the inference argued by Mom. She has failed to make any reasonable argument as to how Dad withdrawing the motion for contempt prevented her from fully and fairly presenting her case.

■ There is simply no factual basis for Mom's allegations of fraud upon the court. In addition, all of the allegedly wrongful conduct by Dad and Mr. Welsh was known by Mom prior to the issuance of the judge's memorandum opinion on November 29, 2004. Had there been inaccuracies in any of Dad's affidavits, Mom could have filed affidavits setting forth her version of what occurred. Had the judge's memorandum opinion been based upon incorrect information, Mom could have filed a motion to amend the findings pursuant to Rule 52(b) of the Idaho Rules of Civil Procedure. Had there been additional evidence that Mom desired to present, she could have moved prior to the entry of judgment to re-open the case to take additional evidence. *Davison's Air Service, Inc. v. Montierth*, 119 Idaho 967, 968, 812 P.2d 274, 275 (1991). An independent action to set aside a judgment based upon alleged fraud upon the court is not a substitute for actions that could have been taken in the trial court to correct the prejudice from allegedly wrongful conduct. As stated in 47 Am. Jur.2d, *Judgments* § 728 (2006) (footnotes omitted):

However, the court's power to vacate a judgment because of a fraud on the court

is not a license for parties to refrain from bringing motions until after an appeal on the merits, and an independent action for fraud may be barred where the plaintiff had ample opportunity to or, in fact, did raise the alleged fraud in the underlying action.

The district court did not err in dismissing this action.

**B. Did the District Court Err in Awarding Dad Attorney Fees Pursuant to Idaho Code § 12–121?**

■ The district judge awarded Dad attorney fees pursuant to Idaho Code § 12–121. "An award of attorney fees under Idaho Code § 12–121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *McGrew v. McGrew*, 139 Idaho 551, 562, 82 P.3d 833, 844 (2003). "We review a trial court's award of attorney fees under the statute under an abuse-of-discretion standard." *Thomas v. Madsen*, 142 Idaho 635, 639, 132 P.3d 392, 396 (2006).

The district court found that Mom's conduct in this lawsuit "suggests an improper purpose such as harassment or maliciousness." That finding is supported by the evidence. The court also examined each of Mom's allegations regarding fraud upon the court and found that there was either no factual basis and/or no legal basis to support them. The court decided that although the initial filing of this lawsuit may not have been frivolous or unreasonable, Mom should have been able to determine through discovery that it was. Giving her almost nine months to conduct that discovery, the court found that beginning on June 14, 2006, Mom pursued this case frivolously or without foundation.

The court found that a reasonable total attorney fee would be $19,680.56. The court divided that fee in half because Mr. Welsh represented both himself[3] and Dad in this lawsuit and would not be entitled to fees for

---

3. There is no basis for filing this lawsuit against Mr. Welsh. He was not a party in the underlying lawsuit and would not be a proper defendant in

representing himself. The court therefore awarded Dad attorney fees in the sum of $9,840.28.

On appeal, Mom argues that she did not pursue this case frivolously. She has failed to show that the district court abused its discretion in awarding attorney fees pursuant to Idaho Code § 12–121. We affirm that award.

### C. Are the Defendants Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 12–121?

The Defendants seek an award of attorney fees on appeal pursuant to Idaho Code § 12–121. "Attorney fees can be awarded on appeal under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Downey v. Vavold*, 144 Idaho 592, 596, 166 P.3d 382, 386 (2007). This appeal certainly qualifies. Mom's lawsuit was devoid of any legal or factual basis, as is this appeal. We therefore award attorney fees on appeal to Dad pursuant to Idaho Code § 12–121. Because Mr. Welsh is representing himself, he is not entitled to an award of attorney fees. *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 377, 973 P.2d 142, 148 (1999).

### IV. CONCLUSION

We affirm the judgment of the district court. We award the respondents costs on appeal, and we award Mr. Bunce attorney fees on appeal.

Justices BURDICK, W. JONES and HORTON concur.

J. JONES, Justice, concurring in part and dissenting in part.

I concur in the Court's opinion, excepting only that part of Section III.C, where the Court denies attorney fees to Mr. Welsh based on the Court's opinion in *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 973 P.2d 142 (1999).

As I pointed out in *Barbee v. WMA Securities, Inc.*, 143 Idaho 391, 397, 146 P.3d 657, 663 (2006), the Court in *Bowles* did not analyze the issue of whether an attorney acting as a pro se litigant may be entitled to attor-

ney fees. Rather, the Court merely cited to a Court of Appeals decision, *Swanson & Setzke, Chtd. v. Henning*, 116 Idaho 199, 774 P.2d 909 (Ct.App.1989), wherein the Court of Appeals held that the rule preventing awards of attorney fees to pro se litigants included attorneys litigating pro se. The Court of Appeals decision was not based upon the language of the statute in question but, rather, upon public policy considerations. As I noted in *Barbee*:

> The Court of Appeals determined that it would be unfair to allow a lawyer pro se litigant to recover fees where non-lawyer pro se litigants could not. The public policy considerations do not take into account that non-lawyer pro se litigants do not have a license to practice law and are not engaged in the business of making a living through the practice of law. The Court of Appeals indicated that lawyer pro se litigants do not make disbursements for time they devote to their own litigation. However, this ignores the fact that "a lawyer's time and advice is his stock in trade," as so aptly put by that great lawyer, Abraham Lincoln. When a lawyer devotes time to a legal action of his own, either to collect an account, to defend a legal action, or otherwise, the attorney may not make a disbursement of funds, but the attorney does make a disbursement of merchandise that could have been sold elsewhere, i.e. his time. If the attorney prevails, there is no language in any of the statutory fee provisions that precludes an award of fees to the attorney. The Court of Appeals in *Swanson & Setzke* went even so far as to state that it would make no difference if the entity seeking fees was a professional service corporation, as opposed to the individual lawyer in the corporation, thereby permitting a de facto piercing of the professional corporation veil in order to apply its public policy. That holding is bad public policy and should not be perpetuated by this Court.

*Barbee*, 143 Idaho at 397, 146 P.3d at 663.

---

an action seeking to set aside the judgment in    that case.