# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38599

BERKSHIRE INVESTMENTS, LLC, an )
Idaho limited liability company; THOMAS G. )
MAILE, IV and COLLEEN BIRCH-MAILE, )
husband and wife, )
                                            )
    Plaintiffs-Counterdefendants-Appellants, )
                                            )
v. )
                                            )    Boise, May 2012 Term
CONNIE WRIGHT TAYLOR, f/k/a )
CONNIE TAYLOR, an individual; DALLAN )    2012 Opinion No. 86
TAYLOR, an individual; R. JOHN )
TAYLOR, an individual; CLARK AND )    Filed: June 1, 2012
FEENEY, a partnership; PAUL T. CLARK, )
an individual; THEODORE L. JOHNSON )    Stephen W. Kenyon, Clerk
REVOCABLE TRUST, an Idaho revocable )
trust; JOHN DOES I-X; and ALL PERSONS )
IN POSSESSION OR CLAIMING ANY )
RIGHT TO POSSESSION, )
                                              )
    Defendants-Counterclaimants- )
    Respondents )
_____ )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

The judgment of the district court is <u>affirmed</u>.

Thomas G. Maile IV and Troupis Law Office, PA, Eagle, for appellants. Christ T. Troupis argued.

Moffatt Thomas Barrett Rock & Fields, Chartered, Boise, and Henderson Law Firm, PLLC, Vancouver, Washington, for respondents. Mark S. Prusynski and Connie W. Taylor argued.

_____

J. JONES, Justice.

    This is the third appeal to this Court arising from a 2002 real estate transaction between Thomas Maile and Colleen Birch-Maile and the Theodore L. Johnson Revocable Trust. The

1

Mailes filed the present action seeking to set aside a 2006 judgment against them, which we affirmed in the second appeal. The district court determined on summary judgment that the 2006 judgment was *res judicata* with regard to the issues raised in the Mailes' complaint. At trial the jury awarded damages against the Mailes on the Taylors' counterclaim. The Mailes appealed and we affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

This Court previously addressed the underlying facts of this case in two separate appeals: (1) *Taylor v. Maile*, 142 Idaho 253, 127 P.3d 156 (2005) (*Taylor I*), and (2) *Taylor v. Maile*, 146 Idaho 705, 201 P.3d 1282 (2009) (*Taylor II*). In *Taylor II*, the Court summarized:

> Thomas G. Maile, IV, is licensed in Idaho as both an attorney and a real estate broker. He provided legal representation to [Theodore L.] Johnson for many years, including advising him on the creation and administration of the [Theodore L. Johnson Revocable] Trust. The Trust owned approximately forty acres of property near Eagle, Idaho. In May of 2002 a third party offered to buy the forty acres for approximately $400,000. Mr. Maile advised Mr. Johnson to reject this offer, and he did in fact reject it. Two months later, on July 22, Thomas and Colleen Maile submitted an earnest money agreement to purchase the property from the Trust on terms and for a price similar to the rejected offer. Mr. Johnson accepted the offer and executed the agreement on behalf of the Trust on July 25.
>
> Mr. Johnson died before the sale transaction could be closed. Approximately a week after Mr. Johnson's death, the successor trustees, Beth Rogers and Andrew Rogers, closed the sale. The Mailes had formed Berkshire Investments, LLC, and assigned their contract rights to that entity, with the approval of Beth Rogers. The Rogers executed the warranty deed conveying the 40 acres to Berkshire over the objections of [Reed, Dallan, and R. John Taylor], who are residual beneficiaries of the Trust. . . . The Rogers were not only co-trustees of the Trust, but also beneficiaries of the Trust . . . .

146 Idaho at 708, 201 P.3d at 1285.

The Taylors sued the Mailes and Berkshire Investments (collectively, "the Mailes") in January 2004, seeking rescission of the sale and damages on the basis that Mr. Maile breached his fiduciary duties and committed professional malpractice in his roles as attorney and real estate broker in the transaction. *Id.* The Mailes moved for dismissal under Idaho Rule of Civil Procedure 12(b)(6), arguing that the Taylors lacked standing because they were not real parties in interest. District Judge Ronald Wilper granted that motion. 142 Idaho at 255–56, 127 P.3d at 158–59. On appeal, this Court held that (1) the Taylors, as residual beneficiaries, were real parties in interest

2

with standing to sue the Mailes without joining the trustees; (2) the Taylors' claim for Mr. Maile's breach of fiduciary duty as real estate broker was untenable due to I.C. § 54-2094;[1] and (3) the Taylors did not have an attorney-client or broker-client relationship with Mr. Maile on which to base their professional malpractice claims. *Id.* at 258–60, 127 P.3d at 161–63. However, the Court remanded for a determination of whether the Mailes were liable for "aiding the trustees in disposing of trust property in violation of their fiduciary responsibilities and receiving the property with knowledge of the same." *Id.* at 261, 127 P.3d at 165.

While the first appeal to this Court was pending, the beneficiaries of the Trust executed a Disclaimer, Release, and Indemnity Agreement (the Disclaimer) in June 2004. *Taylor II*, 146 Idaho at 708, 201 P.3d at 1285. In the Disclaimer, all beneficiaries of the Trust, other than the Taylors, disclaimed their interest in the cause of action against the Mailes. *Id.* The Taylors disclaimed their interest in all other Trust property in favor of their mother, Helen Taylor. *Id.* The beneficiaries agreed to an immediate distribution, the Rogers resigned as trustees, the named successor trustee declined to serve as trustee, and the beneficiaries nominated and appointed the Taylors as trustees. *Id.* In their capacity as trustees, the Taylors then filed a new action in the name of the Trust against the Mailes, and in September 2004, Judge Wilper consolidated the two cases. In November 2004, the Taylors also filed a petition in magistrate court to be appointed as trustees and Magistrate Judge Christopher Bieter entered an order in the pending Johnson probate granting that petition. The Taylors' first petition stated that the Disclaimer made Helen Taylor the sole remaining beneficiary, but an amended petition filed in April 2005 reflected that her sons, the Taylors, remained residual beneficiaries.[2]

On remand from *Taylor I*, the Taylors amended their complaint to comply with this Court's opinion, and on May 15, 2006, the district court granted them summary judgment on the basis that the Rogers—the trustees/beneficiaries who consummated the sale—had a conflict of interest that necessitated court approval of the sale under Idaho Code section 68-108(b).[3] Because no such approval had been sought, the court declared the sale void *ab initio*. Further, the court held that the

---

[1] I.C. § 54-2094 states that absent an agreement to the contrary, a real estate agency does not give rise to a fiduciary relationship.

[2] The Taylors' briefing in the proceedings below explained that "the petition contained a typographical error" stating that Helen Taylor was the "sole remaining beneficiary," when it should have stated that she was the "sole remaining *direct* beneficiary."

[3] I.C. § 68-108(b) states, "If the duty of the trustee and his individual interest … conflict in the exercise of a trust power, the power may be exercised only by court authorization . . . ."

Mailes were not protected as bona fide purchasers under I.C. § 68-110,[4] finding that Mr. Maile had actual knowledge of the conflict at the time of the sale because he undisputedly prepared the trust agreement creating the conflict. Pursuant to that ruling and an earlier partial summary judgment, Judge Wilper issued a judgment on June 7, 2006, quieting title to the real property in the Trust and dismissing all of the Mailes' counterclaims except for their claim for unjust enrichment.[5] After a bench trial, Judge Wilper also dismissed the unjust enrichment claim, finding that money the Mailes spent constructing a barn on the property did not increase its value. *Taylor II*, 146 Idaho at 709, 201 P.3d at 1286.

On appeal for the second time, the Mailes argued that the Disclaimer divested the Taylors of standing to pursue their claims and made the lawsuit moot. *Id.* The Court first found that the argument was not precluded by the Court's holding in *Taylor I*, under the law of the case doctrine, because the Disclaimer was executed subsequent to that appeal and, thus, it could not have been raised in *Taylor I*. *Id.* at 710, 201 P.3d at 1287. However, the Court went on to hold that the Disclaimer did not divest the Taylors of standing because: (1) *Taylor I* announced that trust beneficiaries could pursue a claim against a third-party purchaser of trust property; (2) the cause of action over the real property was an asset that remained in the Trust even after execution of the Disclaimer; and (3) the Taylors expressly reserved a beneficial interest in that cause of action in the Disclaimer. *Id.* Satisfied that the Taylors retained standing, the Court went on to affirm the entirety of Judge Wilper's decision. *Id.* The *Taylor II* opinion was released on January 30, 2009. The Mailes had recorded a lis pendens on May 18, 2006—three days after Judge Wilper granted summary judgment to the Taylors—but did not release it when his judgment was affirmed in *Taylor II*. The lis pendens was not removed of record until August 3, 2009.

On December 31, 2007, while the appeal in *Taylor II* was pending, the Mailes filed the present action against the Trust, the Taylors (except Reed Taylor), and their legal counsel—Clark and Feeney, Connie Wright Taylor, and Paul T. Clark (collectively "Clark and Feeney"). The Mailes filed and recorded a second lis pendens on March 25, 2008, in conjunction with that case, which they did not release until July 13, 2009. In this case, which was assigned to Judge Richard Greenwood, the Mailes sought to set aside the prior judgment of Judge Wilper on numerous

---

[4] I.C. § 68-110 protects third parties dealing with the trustee or assisting the trustee in the conflicted transaction unless the third party has "actual knowledge that the trustee is exceeding his powers or improperly exercising them."
[5] The judgment was subsequently amended to clarify that the Mailes were entitled to repayment of their $400,000 purchase price.

4

theories, all revolving around the assertion that the judgment was induced by fraud on the court committed by the Taylors, the Trust, and Clark and Feeney (collectively "the Respondents").[6] The crux of all the Mailes' claims was that the Respondents misrepresented the effect of the Disclaimer on the Taylors' status as beneficiaries in the prior case, resulting in Judge Wilper's unfavorable decision. As the district court summarized:

> The core fact upon which [the Mailes'] case is built is an alleged misrepresentation made to Judge Bieter in the application to appoint new trustees. The Taylors filed a verified petition for appointment as trustees. The petition contained a statement to the effect that "Helen Taylor is the sole remaining beneficiary of the Trust." The petition was later amended to reflect that she was not the sole beneficiary. In Berkshire's view, the first allegation was true and the second false. Consequently, when the Taylors later caused the Trust to file suit against [the Mailes] alleging they were beneficiaries of the Trust, this was a false statement under oath.

The defendants counterclaimed for slander of title, abuse of process, and intentional interference with a prospective economic advantage.

While those claims were pending before Judge Greenwood, the Mailes filed a motion in the case before Judge Wilper, requesting entry of an order compelling repayment from the Trust of the $400,000 purchase price for the property, plus interest. The motion was denied on the basis that the Trust was not required to return the purchase money as long as the Mailes were still seeking title to the property. On March 15, 2010, Judge Wilper also denied the Mailes' motion to foreclose on a vendee's lien against the property, finding again that the Mailes' own actions prevented the Trust from repaying the purchase price. The court stated, "Defendants' attempt to enforce this Court's judgment, while simultaneously attempting in a collateral proceeding to challenge the judgment, is disingenuous."

On July 2, 2009, Judge Greenwood granted summary judgment in favor of the Respondents, dismissing all of the Mailes' claims on the basis that they were barred by *res judicata*. The court denied summary judgment on the defendants' counterclaims for slander of title, abuse of process, and intentional interference with prospective economic advantage. The counterclaims proceeded to jury trial, and the jury returned a verdict finding that the Mailes committed abuse of process and intentionally interfered with a prospective economic advantage,

---

[6] Specifically, the Mailes asserted claims for: (1) quiet title; (2) imposition of a constructive trust; (3) tortious interference with contract; (4) tortious interference with prospective economic advantage and opportunity; (5) abuse of process; (6) negligence, gross negligence, and negligence *per se*; (7) equitable estoppel; (8) quasi-estoppel; (9) violation of chapter 18, title 78 of the Idaho Code (RICO); and (10) judicial estoppel.

5

assessing damages of $28,427.36. In an oral bench ruling, Judge Greenwood denied the Mailes' I.R.C.P. 50(b) motion for judgment notwithstanding the verdict, finding that there was substantial evidence on which the jury could have made its findings. The court also found that the Mailes' suit was brought frivolously as defined by I.C. § 12-123 and ordered them to pay attorney fees to Clark and Feeney, as a prevailing party, in the amount of $56,502.50. Finally, the court awarded costs to the law firm as a matter of right. The Mailes timely appealed to this Court.

## II.
## ISSUES ON APPEAL

I.      Did the district court err in summarily dismissing the Mailes' claims on the basis that they were precluded by *res judicata*?

II.     Did the district court err in denying the Mailes' motion for judgment notwithstanding the verdict?

III.    Did the district court err in awarding attorney fees and costs to Clark and Feeney?

IV.     Is either party entitled to attorney fees on appeal?

## III.
## DISCUSSION

### A.      Standard of Review

This Court reviews a motion for summary judgment pursuant to the same standards as the district court. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). This Court reviews questions of law *de novo*. *Martin v. Camas County ex rel. Bd. of Comm'rs,* 150 Idaho 508, 511, 248 P.3d 1243, 1246 (2011). Whether an action is barred by *res judicata* is a question of law. *Kootenai Elec. Coop., Inc. v. Lamar Corp.*, 148 Idaho 116, 119, 219 P.3d 440, 442 (2009).

This Court reviews a motion for judgment notwithstanding the verdict pursuant to the same standards as the district court. *Gillingham Const., Inc. v. Newby-Wiggins Const., Inc.*, 142 Idaho 15, 20, 121 P.3d 946, 951 (2005). "A jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury." *Id.* (citing *Hudson v. Cobbs*, 118 Idaho 474, 478, 797 P.2d 1322, 1326 (1990)). The Court may not "reweigh evidence, consider witness credibility, or compare

its factual findings with that of the jury." *Id.* (citing *Griff, Inc. v. Curry Bean Co., Inc.*, 138 Idaho 315, 319, 63 P.3d 441, 445 (2003)). Finally, the moving party is held to admit the truth of all adverse evidence, and the Court draws all reasonable inferences in favor of the non-moving party. *Id.* (citing *Hunter v. State Dep't of Corrs., Div. of Prob. & Parole*, 138 Idaho 44, 47, 57 P.3d 755, 758 (2002)).

This Court applies an abuse of discretion standard when reviewing a district court's award of attorney fees, and the party appealing an award of statutory attorney fees bears the burden of demonstrating a clear abuse of that discretion. *Taylor v. McNichols*, 149 Idaho 826, 848, 243 P.3d 642, 664 (2010); *Appel v. LePage*, 135 Idaho 133, 138, 15 P.3d 1141, 1146 (2000).

### B. The district court correctly dismissed the Mailes' claims on summary judgment.

Judge Greenwood dismissed the Mailes' numerous claims on summary judgment, finding that they were barred by *res judicata* because they were (1) actually litigated in the prior case before Judge Wilper, or (2) could have been raised in that case. On appeal, the Mailes argue that they never received their day in court on their fraud allegations, which they now package in a variety of tort, equitable, and criminal claims. They also argue that the alleged fraud provides an exception to *res judicata*, relying on I.R.C.P. 60(b) principles, equity, and the assertion that their fraud case was not ripe until a final judgment was issued by Judge Wilper. The Respondents argue that Judge Wilper's judgment is indeed *res judicata*, emphasizing that: (1) the issue of the Taylors' status following the Disclaimer could have been raised in Judge Wilper's court and, in fact, was expressly addressed by this Court in *Taylor II*; (2) the Mailes failed to file a Rule 60(b) motion in Judge Wilper's case within the time allowed; and (3) the conduct alleged in this case does not amount to fraud constituting an exception to *res judicata*.[7]

As the district court correctly noted, *res judicata* includes two legal concepts—issue preclusion or collateral estoppel and claim preclusion. *Stoddard*, 147 Idaho at 190–91, 207 P.3d at

---

[7] The Taylors also argue that the decision in *Taylor II*—that the Taylors retained standing following the Disclaimer—also became the law of the case. While that may be true in the Judge Wilper case—and the Mailes' present lawsuit seems a mere tactic to circumvent that doctrine—the law of the case doctrine only applies to bar re-litigation of issues in a single case and its subsequent progress. *See Swanson v. Swanson*, 134 Idaho 512, 515, 5 P.3d 973, 976 (2000). Here, because a separate action has been filed, *res judicata* is the more applicable doctrine, regardless of how similar its parties and issues. *See Stoddard v. Hagadone*, 147 Idaho 186, 190–91, 207 P.3d 162, 166–67 (2009).

166–67. Collateral estoppel bars relitigation of an issue previously determined when:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id.* Claim preclusion "bars a subsequent action between the same parties upon the same claim or upon claims 'relating to the same cause of action.'" *Id.* (quoting *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 804 (2002)). Under this doctrine, a claim is also precluded if it could have been brought in the previous action, regardless of whether it was actually brought, where: (1) the original action ended in final judgment on the merits, (2) the present claim involves the same parties as the original action, and (2) the present claim arises out of the same transaction or series of transactions as the original action. *Ticor Title Co. v. Stanion*, 144 Idaho 119, 125–27, 157 P.3d 613, 618–20 (2007).

Here, the Mailes have asked Judge Greenwood—and now this Court—to breathe new life into a lawsuit already laid to rest. However, the doctrine of *res judicata* exists to prevent exactly the type of resurrection they seek. As an initial matter, issue and claim preclusion both require that the separate proceedings involve the same parties or their privies. *Id.* at 125, 157 P.3d at 618. To be a privy, "a person not a party to the former action must 'derive[ ] his interest from one who was a party to it.'" *Id.* (quoting *Kite v. Eckley*, 48 Idaho 454, 459, 282 P. 868, 869 (1929)). Here, although Clark and Feeney was not a party to the prior action, the district court was correct in determining that the attorneys were in privity with their clients, the Taylors and the Trust, who were parties to that action. As the district court noted, their only interest in the present action arose from their representation of their clients in the former action, and they were named solely for their alleged conduct in that capacity. Thus, the *res judicata* analysis applies to all Respondents.

The remaining elements of issue preclusion are also satisfied. All of the Mailes' claims hinge on a single issue that we already disposed of in *Taylor II*—whether the Disclaimer in fact divested the Taylors of standing to challenge the real estate transaction as beneficiaries. First, the Mailes had a full and fair opportunity to litigate that issue before Judge Wilper. The Disclaimer was executed in June 2004, while the appeal in *Taylor I* was pending, and there is no allegation that that fact was somehow hidden from the Mailes. Indeed, at the jury trial in this case, Colleen

8

Birch-Maile stated that the Mailes had the Disclaimer in their possession in 2004 but were not "looking for misrepresentation" at that time.[8] Although the Mailes argued on appeal in *Taylor II* that the Disclaimer was not adequately addressed by Judge Wilper, it is undisputed that it was raised as an issue to this Court[9] and expressly resolved.

> In *Taylor II*, we stated:

> While [*Taylor I*] was pending, the beneficiaries of the Trust executed the Disclaimer, Release, and Indemnity Agreement (Disclaimer) in June 2004. In the Disclaimer, the beneficiaries, *other than the Taylors*, disclaimed any interest in the lawsuit against the Mailes. In addition, the Taylors disclaimed their interest in all *other* Trust property in favor of their mother, the beneficiaries agreed to an immediate distribution to beneficiaries, the Rogers resigned as trustees, the named successor trustee declined to serve as trustee, and the beneficiaries nominated and appointed the Taylors as trustees.

146 Idaho at 708, 201 P.3d at 1285 (emphasis added). Further, contrary to the Mailes' echoing arguments, we held:

> In the Disclaimer, the Taylors specifically reserved their ownership interest in the lawsuit against the Mailes. Therefore, they have a legal interest in the outcome of the case and a favorable decision will result in relief in the form of title to the Linder Road property. Moreover, under Idaho law, a chose in action is an asset. *See Blake v. Blake,* 69 Idaho 214, 219, 205 P.2d 495, 498 (1949). Here, the current action is an asset that remained in the Trust, so the Disclaimer did not work to terminate the Trust. Thus, the Taylors' lawsuit is not moot and they have standing to pursue this claim against the Mailes.

*Id.* at 710, 201 P.3d at 1287.

Further, the underlying issue pervading the present case is also identical to that in the Mailes' original action. Although the Mailes attempt to repackage it in terms of fraud, perjury, negligence, and even racketeering, the central issue underlying all of their claims is the interpretation of the Disclaimer and its effect on the Taylors' beneficial status. In other words,

---

[8] She also admitted that they had received at that time a copy of the petition for appointment as trustees filed with Judge Bieter in November 2004, on which the Mailes now also base their allegations of fraud.

[9] On appeal in *Taylor II*, the Mailes raised 16 issues, including:

> (f) Was the Court correct in determining that the Respondents as beneficiaries of the trust had standing to pursue the claims which were ultimately granted by the Beneficiaries' Motion for Summary Judgment?

> (k) Did the Court err in failing to consider the effect of the Disclaimer and Indemnification Agreement executed by the respondents and the successor trustees and the other beneficiaries of the trust relating [to] the claims against the Appellants?

their present claims rely on the legal conclusion that the Taylors, through the Disclaimer, divested themselves of their status as beneficiaries, yet continued to pursue that action as beneficiaries. However, we expressly interpreted the Disclaimer in *Taylor II* and held that that was not the case—the Taylors retained beneficial status by reserving a right to their lawsuit against the Mailes. Because that issue was actually decided by this Court and Judge Wilper's final judgment on the merits was affirmed, all of the elements of issue preclusion are satisfied and apply to preclude the Mailes' claims.

The Mailes' action is also barred by claim preclusion. First, as indicated above, the prior case ended in a final judgment on the merits, which was affirmed by this Court, and involved the same parties (and their privies) as the present case. Secondly, all of the claims in the present case arise out of the same transaction as did the original action—the sale of the real property to the Mailes. As indicated above, such claims are barred by *res judicata* whether actually raised in the prior litigation or not. *Ticor Title Co.*, 144 Idaho at 125–27, 157 P.3d at 618–20. As the district court noted, the Mailes' claims for quiet title, tortious interference with contract, tortious interference with a prospective business advantage, equitable estoppel, and quasi-estoppel were all actually raised in the prior case. Thus, they are now barred from being raised a second time.

Likewise, the balance of the Mailes' claims—abuse of process, negligence, negligence *per se*, gross negligence, and violation of Idaho Code chapter 18, title 78—also stem from that transaction and the subsequent lawsuit over that transaction. Thus, they are similarly barred. The Mailes argue that those claims were not ripe until the alleged misrepresentation resulted in Judge Wilper's adverse judgment. However, all of the conduct on which those claims are based—the execution of the Disclaimer, the filing of the Taylors' petition for appointment as trustees, and the filing of the amended complaint—occurred and was made known to the Mailes while *Taylor I* was pending, before Judge Wilper even proceeded to the merits of the case. Accordingly, any claim arising from that conduct ripened at that time and should have been raised. Indeed, as indicated above, the issue underlying those claims *was* raised to this Court and decided in favor of the Taylors.

The Mailes' arguments based on I.R.C.P. 60(b) and equitable principles are similarly untenable. Rule 60(b) allows a court to "relieve a party or his legal representative from a final judgment, order, or proceeding for . . . fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." However, the Mailes

failed to file a Rule 60(b) motion in the proper forum—Judge Wilper's court—or within the six-month time period allotted by the rule. I.R.C.P. 60(b). *See also Eliopulos v. Idaho State Bank*, 129 Idaho 104, 108, 922 P.2d 401, 404 (Ct. App. 1996) (noting that the normal procedure for a Rule 60(b) motion is to file it in the court that rendered the judgment). Further, although that rule also leaves room for a court to "set aside a judgment for fraud upon the court" in an independent action, this Court has held that such an independent action should rarely be entertained. *Compton v. Compton*, 101 Idaho 328, 335, 612 P.2d 1175, 1182 (1980). In *Compton*, we stated:

> The independent action in equity is a most unusual remedy, available only rarely and under the most exceptional circumstances. It is most certainly not its function to relitigate issues determined in another action between the same parties, or to remedy the inadvertence or oversight of one of the parties to the original action. It will lie only in the presence of an extreme degree of fraud.

*Id.* at 335, 612 P.2d at 1182. Moreover, such an action "is not a substitute for actions that could have been taken in the trial court to correct the prejudice from allegedly wrongful conduct." *Rae v. Bunce*, 145 Idaho 798, 805, 186 P.3d 654, 661 (2008).

Here, the alleged conduct does not amount to fraud at all, let alone fraud sufficient to warrant the unusual and rare remedy the Mailes request. As indicated above, the fraud and other misrepresentation claims are predicated on the Mailes' incorrect interpretation of the Disclaimer—that it divested the Taylors of any beneficial interest in the Trust. In asserting their status as beneficiaries, however, the Taylors were merely asserting their own interpretation of the Disclaimer—that in it, they expressly reserved a beneficial interest. Where the language of that Disclaimer was before the Court, the Taylors' position on the effect of that language was no more a misrepresentation than was the Mailes'. Indeed, the Court vindicated the Taylors' position on appeal. Moreover, as indicated above, all circumstances giving rise to the Mailes' claims of misrepresentation were known to the Mailes during the prior case, and Judge Greenwood correctly determined that any action to correct those alleged misrepresentations could and should have been taken during that proceeding.

The Mailes had their day in court, and Judge Greenwood was correct in denying them another.

### C. The district court correctly denied the Mailes' motion for judgment notwithstanding the verdict (JNOV).

In his oral denial of the Mailes' motion for JNOV, Judge Greenwood found that substantial evidence supported the jury's findings of abuse of process and intentional interference with a

11

prospective economic advantage. In regard to abuse of process, Judge Greenwood stated,

> There is evidence from which a jury could find, clearly in my opinion, that there was abuse of process, and it goes beyond the mere filing of the complaint, although I believe that in this instance the filing of the complaint itself under the facts of this case would be sufficient to support a claim for abuse of process.

In addition, the judge found there was sufficient evidence showing: (1) the second lawsuit should never have been filed, (2) it contained unjustified personal attacks on the attorneys involved, (3) it "play[ed] one judge against another," (4) it was intended to punish the Taylors and the Trust, and (5) it was intended to coerce back land to which the Mailes had no legal claim. The court found that same evidence largely applicable to the interference with a prospective economic advantage claim, as well as the evidence of the second lis pendens the Mailes filed and recorded in 2008.

On appeal, the Mailes argue that the evidence only showed that they filed a "mere complaint," which they assert cannot as a matter of law constitute abuse of process. Further, they argue that their lis pendens was rightfully filed and maintained to ensure the return of their $400,000 purchase price on the property. The Respondents counter that the frivolous complaint alone supports a finding of abuse of process, and substantial evidence was presented at trial of the unreasonableness of filing that lawsuit. Further, they argue there was evidence presented upon which a jury could reasonably find that the suit was brought—and the lis pendens maintained—to punish the Respondents or coerce back land to which the Mailes had no legal right. This, they argue, also supports the finding of interference with a prospective economic advantage.[10]

Abuse of process involves two elements: (1) a willful act in the use of legal process not proper in the regular course of the proceeding that was (2) committed for an ulterior, improper purpose. *Badell v. Beeks*, 115 Idaho 101, 104, 765 P.2d 126, 129 (1998). *Badell* does not resolve the parties' dispute over whether a frivolous complaint alone might satisfy the first element, and

---

[10] The parties also dispute whether the litigation privilege should have applied to preclude the Mailes' liability on the Respondents' counterclaims. Specifically, Mr. Maile argues that Judge Greenwood should have applied the privilege because he was acting as an attorney in the case as well as a party. The district court found otherwise, reasoning that the Respondents' counterclaims were against Mr. Maile in his individual capacity. Indeed, as the Respondents correctly point out, the litigation privilege has only been applied to defamation claims based on particular statements made during the course of litigation. *See Taylor v. McNichols*, 149 Idaho 826, 836–37, 243 P.3d 642, 652–653 (2010); *Weitz v. Green*, 148 Idaho 851, 862, 230 P.3d 743, 754 (2010). Further, it only applies to an attorney "acting within the scope of his employment, and not solely for his personal interests." *Taylor*, 149 Idaho at 837, 243 P.3d at 653. Thus, it does not apply to Mr. Maile in this matter, and it certainly does not apply to preclude the Respondents' counterclaims for abuse of process and interference with a prospective economic advantage.

out-of-state case law on the subject is somewhat conflicting.[11] We agree with the Mailes that filing a "mere complaint" will not generally trigger such a claim, but the act of summoning a defendant into court to defend against a groundless complaint might—when done for an improper purpose. Indeed, the allegations on which the Mailes hauled the Taylors back into court were uniquely frivolous and accompanied by sufficient evidence of an improper purpose to satisfy the *Badell* elements.

The Mailes' complaint went beyond a mere vexatious lawsuit filed in violation of I.R.C.P. 11(a)(1),[12] but rather sought to second guess Judge Wilper's and this Court's prior rulings, with no regard for the doctrine of *res judicata*. Moreover, it was filed while Judge Wilper's case was still pending, in violation of I.R.C.P. 11(a)(2).[13] The jury was presented with sufficient evidence to that effect through the testimony of the Respondents' expert on civil procedure, Craig Lewis. After walking the jurors through the reasons why the Mailes' lawsuit was barred by *res judicata*, Lewis testified, "A reasonable attorney should have expected that preclusion doctrine would bar the second suit, would not be able to win . . . . I don't think a reasonable lawyer aware of the situation should have had a reasonable expectation that they could prevail on suit No. 2." Even Mr. Maile, in his testimony, admitted that he knew the land sale contract was still void regardless of whether Judge Wilper's decision was set aside, and the Mailes' only hope of having the land returned to them was through adjudication of their quasi-estoppel claim, which was presented and denied in the first lawsuit. Further, as the district court noted, the jurors also heard evidence that in filing the

---

[11] In declining to find an abuse of process in *Badell*, the Court actually emphasized that "probable cause" existed for the lawsuit and that the lawsuit was filed to induce settlement, which is a goal of proper process. *Id.* at 104, 765 P.2d at 129. Other recent out-of-state cases indicate that the filing.2 of a baseless complaint may support a claim for abuse of process. *Seipel v. Olympic Coast Inv.*, 188 P.3d 1027, 1032 (Mont. 2008) ("Use of the court system to file a baseless legal claim may constitute an abuse of process."); *Yandon v. Lowry*, 126 P.3d 332, 337 (Colo. App. 2005) ("[T]he very filing of a lawsuit" may suffice where the "claim is 'devoid of factual support or if supportable in fact, [has] no cognizable basis in law.'") (citations omitted). On the other hand, the Mailes are correct that a significant number of other courts have been loath to allow abuse of process claims based on a complaint alone. *E.g. Abraham v. Lancaster Comty. Hosp.*, 217 Cal. App. 3d 796, 826 (Ct. App. 2nd Dist. 1990); *Lexalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985) (citing cases from 10 jurisdictions disapproving of abuse of process claims based on the mere filing of a complaint).

[12] "The signature of an attorney or party [on a pleading] constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." I.R.C.P. 11(a)(1).

[13] As the Respondents point out, this act of "working both ends of the hallway" violates I.R.C.P. 11(a)(2), which states, "In any action, if an application by any party to the judge of a court for the issuance or an order or writ is denied in whole or in party by such judge, neither the party nor the party's attorney shall make any subsequent application to any other judge except by appeal to a higher court . . . ."

second lawsuit while still seeking to enforce the judgment from the first, the Mailes were "playing one judge against another."

There was also evidence presented to the jury that the Mailes filed a second lis pendens in the case before Judge Greenwood, even while maintaining their first lis pendens filed during the Judge Wilper case. The proper purpose of a lis pendens is to provide constructive notice to third parties that an action affecting title to real property is pending. I.C. § 5-505. Contrary to the Mailes' argument, it is not properly used as some kind of lien to ensure payment. *See Yandon*, 126 P.3d at 337 (finding the act of "recording a lis pendens . . . as leverage to demand money, property, or some advantage" to be a proper basis for an abuse of process claim). As the district court found, any protection the Mailes needed to ensure the return of their $400,000 purchase price was properly found in Judge Wilper's court. Coupled with the ruling in the prior case that the Mailes had no legal right to the real property and the evidence that the subsequent lawsuit had no reasonable chance of altering that ruling, the jury was well within reason in finding that maintaining that lis pendens was improper.

In the absence of any reasonable purpose for the lawsuit and accompanying lis pendens, this same evidence—coupled with the rampant and baseless criminal accusations in the complaint—also reasonably supported an inference of an improper purpose, such as to coerce back the land or simply punish the Respondents. As the district court noted, coercion, punishment, and harassment are certainly improper purposes for the use of civil process. 1 Am. Jur. 2d *Abuse of Process* § 6 (2012) ("The ulterior motive or purpose generally required in an abuse of process action may take the form of coercion to obtain a collateral advantage not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club . . . ."). *See also* I.C. § 12-123 (allowing an award of attorney fees for conduct serving "merely to harass or maliciously injure another party to the civil action").

As for the intentional interference with a prospective economic advantage claim, the district court was correct that the same evidence applies. As the Respondents point out, the Mailes do not dispute that their lawsuit was an intentional interference, only that their interference was wrongful under Idaho law. Indeed, the intentional interference tort requires the plaintiff to establish that the interference was "wrongful by some measure beyond the fact of the interference itself." *Idaho First Nat'l Bank v. Bliss Valley Foods*, 121 Idaho 266, 284–85, 824 P.2d 841, 859–60 (1991). Wrongfulness may be shown through proof that: "(1) the defendant had an improper

14

objective or purpose to harm the plaintiff; or (2) the defendant used a wrongful means to cause injury to the prospective business relationship." *Id.* As discussed above, the jury could have reasonably found that a lawsuit and lis pendens filed with no reasonable hope of success, in violation of Idaho judicial process standards, and as leverage to ensure payment or the return of the property, constituted using wrongful means. Further, the jury could have reasonably inferred from that same evidence that the Mailes were driven by an improper purpose.

In light of the substantial evidence presented, Judge Greenwood was correct in denying the JNOV motion.

### D. The district court correctly awarded costs and attorney fees to Clark and Feeney.

The district court also found that the Mailes' suit was brought frivolously as defined by I.C. § 12-123, and ordered them to pay attorney fees to Clark and Feeney, as a prevailing party, in the amount of $56,502.50. The court also awarded the firm costs as a matter of right. The Mailes assert that their lawsuit was not brought frivolously and that they were the prevailing party when the "adjusted award" as defined by I.R.C.P. 68 was compared to a $55,000 offer of judgment they made on November 16, 2009. The Respondents argue that the district court acted within its discretion in awarding both fees and costs.

Rule 54(e)(1) provides for a reasonable award of attorney fees to a prevailing party "when provided for by any statute or contract." I.C. § 12-123 allows for such an award to a party adversely affected by frivolous conduct, which is defined as conduct that "obviously serves merely to harass or maliciously injure another party to the civil action" or "is not supported in fact or warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." A prevailing party is also entitled to certain costs as a matter of right under I.R.C.P. 54(d)(1).

First, we find no abuse of discretion in the district court's determination that the Mailes' lawsuit was brought and maintained frivolously under this definition. As discussed above, the Mailes' suit before Judge Greenwood was simply an attempt to relitigate an issue that had already been decided by this Court. It was also based on identical facts as the action before Judge Wilper, so it was clearly barred by both issue and claim preclusion. Further, the Mailes' claims for misrepresentation—the core of their lawsuit—were based on the Taylors' mere interpretation of the effect of the Disclaimer, which was no more a misrepresentation than the Mailes' own interpretation. Thus, because the Mailes' claims lacked reasonable basis in fact or law, the district

15

court acted within its discretion in invoking I.C. § 12-123.

Secondly, the court did not abuse its discretion in determining that Clark and Feeney was a prevailing party in the action. The firm was successful in securing dismissal of the Mailes' entire case on summary judgment, and the Mailes' offer of judgment did not affect its entitlement to fees and costs as a prevailing party. The "adjusted award" a court is tasked with comparing to an offer of judgment under Rule 68 consists of "(1) the verdict in addition to (2) the offeree's costs under Rule 54(d)(1) incurred before service of the offer of judgment and (3) any attorney fees under Rule 54(e)(1) incurred before service of the offer of judgment." I.R.C.P. 68(b). The cost-shifting provisions of that rule are triggered only when "the adjusted award obtained by the offeree is less than the offer." *Id.* Here, the jury verdict of $28,437, when added to the $34,854.50 in fees incurred by Clark and Feeney as of the time the offer of judgment was served,[14] clearly exceeded the Mailes' $55,000 offer of judgment. Therefore, the district court did not abuse its discretion in declining to apply the provisions of Rule 68.

Because Clark and Feeney was a prevailing party in an action brought frivolously, Judge Greenwood did not abuse his discretion in awarding the firm fees and costs.

**E.      The Trust, the Taylors, and Clark and Feeney are entitled to attorney fees on appeal pursuant to I.A.R. 41 and I.C. § 12-121.**

The Mailes argue that they are entitled to attorney fees on appeal under I.A.R. 41, I.C. § 12-121, and I.C. § 18-7805 (the racketeering statute). The Respondents counter that their defense to the appeal was not frivolous and that the Mailes were clearly not the prevailing party below, as required by those statutes. Further, the Respondents argue that because their award of attorney fees was appropriate below, they are also entitled to fees on appeal, pursuant to I.A.R. 41 and I.C. § 12-121, for being forced to respond to a frivolous appeal.

This Court awards attorney fees on appeal pursuant to I.A.R. 41(a) and I.C. §12-121 when it is "left with an abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation." *Durrant v. Christensen*, 117 Idaho 70, 74, 785 P.2d 634,

---

[14] Counsel for Clark and Feeney submitted a detailed account of all time spent on the case from April 25, 2008, to February 8, 2011, resulting in the fee award of $56,502.50. Counsel stated, under oath, that $34,854.50 in fees had been necessarily incurred in representing Clark and Feeney in the litigation as of the time the Mailes served their offer of judgment on November 16, 2009. The Mailes did not dispute this fact but asserted that Clark and Feeney could only claim attorney fees incurred between March 13 and November 16, 2009, amounting to $8,853, in the calculation of the adjusted award. However, the Mailes made no cogent argument as to why Clark and Feeneys' attorney fees incurred prior to March 13, 2009, should be excluded from the calculation.

638 (1990) (citing *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979)). In *Durrant*, the Court made such an award where the appellants were assessed fees for frivolity below and, on appeal, "presented no persuasive argument that the district court, in granting attorney fees, abused its discretion or misapplied the law." *Id.* at 74–75, 785 P.2d at 638–39. As discussed above, such is the case here, and the Respondents are entitled to fees on appeal.

## IV.
## CONCLUSION

For the foregoing reasons, the district court was correct in summarily dismissing the Mailes' lawsuit and denying their motion for JNOV. Further, the district court did not abuse its discretion in awarding attorney fees and costs to Clark and Feeney. Accordingly, we affirm the district court and award attorney fees and costs to the Respondents on appeal.

Chief Justice BURDICK, and Justice EISMANN, and Justices Pro Tem HOSACK and LUSTER CONCUR.