# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 40595-2012 and 40599-2013

REED J. TAYLOR, an individual, )
           )
     Plaintiff-Respondent, )
           )
v. )
           )
RICHARD A. RILEY, an individual, )
           )
     Defendant-Appellant, )
           )
and )
           )
HAWLEY TROXELL ENNIS & HAWLEY )
LLP, an Idaho limited partnership; SHARON )
CUMMINGS, Personal Representative of the )
ESTATE OF ROBERT M. TURNBOW; and )
EBERLE, BERLIN, KADING, TURNBOW )
& MCKLVEEN, CHARTERED, an Idaho )
corporation, )
           )
     Defendants. )
           )
_____ )
           )
REED J. TAYLOR, an individual, )
           )
     Plaintiff-Respondent, )
           )
v. )
           )
SHARON CUMMINGS, as Personal )
Representative of THE ESTATE OF )
ROBERT M. TURNBOW, and EBERLE, )
BERLIN, KADING, TURNBOW & )
MCKLVEEN, CHARTERED, an Idaho )
corporation, )
           )
     Defendants-Appellants, )
           )
and )
           )
RICHARD A. RILEY, an individual, and )
HAWLEY TROXELL ENNIS & HAWLEY, )

Boise, June 2014 Term

2014 Opinion No. 86(B)

Filed: August 27, 2014

Stephen W. Kenyon, Clerk

*SECOND* AMENDED OPINION
THE COURT'S PRIOR
OPINION DATED AUGUST 25,
2014 IS HEREBY AMENDED.

**LLP, an Idaho limited partnership,** )

)

   **Defendants.** )

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. Richard D. Greenwood, District Judge.

The order of the district court is <u>affirmed</u> in <u>part</u> and <u>reversed</u> in <u>part</u>.

Jeffrey A. Thomson, Elam & Burke P.A., Boise, argued for appellant Richard A. Riley.

Michael D. Gaffney, Beard St. Clair Gaffney P.A., Idaho, Falls, argued for respondent.

Jack S. Gjording, Gjording Fouser PLLC, Boise, for the appellants Estate of Robert M. Turnbow and Eberle, Berlin, Kading, Turnbow & McKlveen Chartered.[1]

---

EISMANN, Justice.

This is a permissive appeal out of Ada County from an order denying the appellants' motions for summary judgment. The central issue is whether an attorney who, as counsel for a corporation, issues an opinion letter stating that a stock redemption agreement does not violate the law can be held liable to the shareholder whose stock was redeemed if the opinion was incorrect and the redemption agreement was later declared void as violating state law. We hold that the claim against appellant Richard A. Riley was barred by res judicata and that there can be a claim against the remaining appellants where the opinion letter was addressed to respondent and stated that he could rely upon it.

## I.
## Factual Background.

The current lawsuit arises out of an opinion letter issued by Messrs. Richard A. Riley and Robert M. Turnbow as counsel for AIA Services Corporation in connection with the

---

[1] Due to a sudden illness, Mr. Gjording was unable to attend oral argument, and the Court ordered that the appeal of Estate of Robert M. Turnbow and Eberle Berlin would be decided on the briefs.

corporation's contract to redeem the shares of its stock owned by Reed J. Taylor. In 1995, Mr. Taylor owned 63% of the outstanding shares of common stock in AIA Services Corporation, and he served as both the chair of the board of directors and the chief executive officer. In order to transfer ownership of the corporation, the interested parties negotiated an agreement under which the corporation would redeem Mr. Taylor's stock. His attorney required that the corporation provide an opinion letter from its counsel regarding the proposed stock redemption.

On August 15, 1995, Messrs. Riley and Turnbow, as counsel for the corporation, issued the opinion letter, which was addressed to Mr. Taylor. In that letter, they stated, among other things, that the corporation and its subsidiaries "have full corporate power and authority to enter into, execute and deliver the Transactions Documents and to perform their respective obligations thereunder"; that "all corporate action on the part of Company and its Subsidiaries, and their respective . . . shareholders, necessary for the authorization, execution, delivery and performance by Company and its Subsidiaries of the Transaction Documents and the consummation of the transactions contemplated thereby has been taken"; and that the "Transaction Documents constitute the valid and binding obligation of Company and its Subsidiaries enforceable against them in accordance with their respective terms."

Mr. Taylor and the corporation entered into a Stock Redemption Agreement dated July 22, 1995, under which the corporation agreed to redeem Mr. Taylor's stock for the sum of $7.5 million and other consideration. For the consideration to be paid in cash, the corporation gave Mr. Taylor a promissory note in the sum of $1.5 million payable within ninety days and a promissory note in the sum of $6 million payable within ten years, with monthly interest-only payments until the note was paid in full and payments of principal only upon the consent of Mr. Taylor. As security for the payment of the $6 million note, the corporation and Mr. Taylor entered into a Stock Pledge Agreement under which the corporation pledged the stock in its closely held corporations. The corporation and its subsidiaries also entered into a Security Agreement under which they granted Mr. Taylor a security interest in commissions to be received by them. As part of the transaction, the corporation entered into a Consulting Agreement under which the corporation contracted to pay Mr. Taylor as a consultant for three years, and they entered into a Noncompetition Agreement under which Mr. Taylor agreed not to compete with the company for a period of three years or until payment of the note, whichever was later.

3

The corporation did not make the payments as they came due under the promissory notes, and Mr. Taylor agreed to enter into a Stock Redemption Restructure Agreement dated July 1, 1996. Under that agreement, the parties agreed to restructure the stock redemption transaction. The corporation still failed to make the payments as they came due, and on January 29, 2007, Mr. Taylor filed a lawsuit ("*Taylor v. AIA Services Corporation*") against the corporation, members of its board of directors, and the corporation's wholly owned subsidiary AIA Insurance, Inc. Additional Defendants were added later, and 401(k) Profit Sharing Plan of AIA Services Corporation was later granted permission to intervene.

Defendants in that lawsuit moved for summary judgment on the ground that the stock redemption agreement was an illegal contract and therefore void because it violated Idaho Code section 30-1-6 (1995). The relevant portion of that statute provided as follows:

> A corporation shall have the right to purchase, take, receive or otherwise acquire, hold, own, pledge, transfer or otherwise dispose of its own shares, but purchases of its shares, whether direct or indirect, shall be made only to the extent of unreserved and unrestricted earned surplus available therefor, and, if the articles of incorporation so permit or with the affirmative vote of the holders of a majority of all shares entitled to vote thereon, to the extent of unreserved and unrestricted capital surplus available therefor.

On June 17, 2009, the district court held that the stock redemption agreement was void because it violated section 30-1-6. The court summarized its decision as follows:

> In 1995, Idaho Code prohibited a corporation from purchasing its own shares unless the corporation had earned surplus to the extent of the purchase or, upon the affirmative vote of a majority of shareholders, the corporation had capital surplus or a combination of earned surplus and capital surplus to the extent of the purchase. In 1995, the earned surplus of AIA was in the negative and there has been no evidence presented to the Court that there was an affirmative vote of the majority of shareholders that capital surplus could be looked to for the redemption of Reed Taylor's shares. Therefore, the 1995 stock redemption agreement was entered in violation of Idaho Code, making the agreement illegal and unenforceable.

On September 4, 2009, the district court entered a final partial judgment dismissing Mr. Taylor's claims based upon the validity of the stock redemption agreement, and it certified the judgment as final pursuant to Rule 54(b) of the Idaho Rules of Civil Procedure. Mr. Taylor appealed that judgment, and this Court affirmed it on appeal. *Taylor v. AIA Services Corp.*, 151 Idaho 552, 565, 261 P.3d 829, 842 (2011).

4

On October 1, 2009, Reed J. Taylor filed this action against Richard A. Riley; the law firm of Hawley Troxell Ennis & Hawley, LLP; Robert M. Turnbow; and the law firm of Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered. Mr. Taylor sought to recover damages based upon an opinion letter issued on August 15, 1995, by Messrs. Riley and Turnbow as counsel for AIA Services Corporation in connection with the redemption of Plaintiff's stock in the corporation. At that time, they were both members of Eberle Berlin, but Mr. Riley later left that firm and was a member of Hawley Troxell when this action was filed. While this action was pending, Mr. Turnbow passed away, and his estate was substituted for him as a Defendant.

In his complaint filed in this case, Mr. Taylor alleged claims for negligent misrepresentation, malpractice, violation of the Consumer Protection Act, breach of fiduciary duties, and fraud. The Defendants filed motions for summary judgment on all claims. During oral argument on the motions, the district court stated that it was dismissing the negligent misrepresentation claims and the claims based upon the Idaho Consumer Protection Act. An order was entered on April 21, 2010, regarding these claims. On May 10, 2010, the district court entered an order granting summary judgment as to Plaintiff's claims against Hawley Troxell; granting summary judgment as to Plaintiff's claims for breach of fiduciary duty; and granting summary judgment as to Plaintiff's malpractice claims allegedly asserted on behalf of the corporation. It denied summary judgment as to the malpractice claim based upon the issuance of the opinion letter and as to the fraud claim, rejecting the argument that such claim was barred by res judicata or the statute of limitations.

On June 3, 2010, the district court entered a judgment dismissing with prejudice all claims against Hawley Troxell. The district court later revisited the fraud claim and, in a decision entered on April 5, 2012, it held that the fraud claim, which was based upon the opinion letter, was barred by this Court's decision in *Taylor v. AIA Services Corporation*. It then entered an order dismissing the fraud claim as to all Defendants.

The Defendants renewed their motions for summary judgment, reasserting that the Plaintiff's claims were barred by res judicata and contending that Plaintiff waived his claim based upon the opinion letter by signing an agreement in 1996 that amended the terms of payment. By a memorandum opinion entered on October 24, 2012, the district court denied the renewed motions for summary judgment.

The Defendants filed a motion for a permissive appeal, and this Court granted permission to appeal the district court's decision that was filed on October 24, 2012. As a general rule, the denial of a motion for summary judgment is not appealable even when the appeal is from a subsequent final judgment. *Lewiston Indep. Sch. Dist. No. 1 v. City of Lewiston*, 151 Idaho 800, 808, 264 P.3d 907, 915 (2011). However, this Court can grant permission to appeal an order that is otherwise not appealable when this Court determines that the order "involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially advance the orderly resolution of the litigation." I.A.R. 12. Mr. Riley filed an appeal, as did the Estate of Robert M. Turnbow and Eberle Berlin.

## II.
### Does the Illegality Doctrine Bar Any Claim Based upon the Opinion Letter?

The illegality doctrine was not raised in the district court. When we grant a motion for permissive appeal, we only address the precise issue(s) framed by the motion and ruled upon by the district court. *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 789, 215 P.3d 505, 509 (2009). However, the alleged illegality of a contract may be raised at any stage of the litigation, including for the first time on appeal. *Trees v. Kersey*, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002).

"An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy," and such a contract "is illegal and unenforceable." *Farrell v. Whiteman*, 146 Idaho 604, 609, 200 P.3d 1153, 1158 (2009). The stock redemption agreement was prohibited by law and was an illegal contract. *Taylor*, 151 Idaho at 565, 261 P.3d at 842. Mr. Riley alleges that Mr. Taylor "is attempting to recover damages based on and arising out of the illegal Stock Redemption Agreement through the guise of a malpractice action against the attorney for the other party to the illegal contract."

Mr. Taylor's cause of action is not to recover damages based upon the stock redemption agreement. It is to recover damages based upon the issuance of the opinion letter that failed to mention that the transaction did not comply with Idaho Code section 30-1-6. There is no contention that the opinion letter constitutes an illegal contract. Therefore, Mr. Taylor's claims are not barred by the illegality doctrine.

6

## III.
### Did the District Court Err in Holding that Plaintiff's Claim of Malpractice Was Not Barred by the Doctrine of Res Judicata?

**a. Res judicata as to Mr. Riley.** On April 16, 2008, several Defendants in *Taylor v. AIA Services Corporation* filed a motion for partial summary judgment asserting that the stock redemption agreement was an illegal contract and therefore void because it violated Idaho Code section 30-1-46 (1995). On September 4, 2008, Mr. Taylor filed a motion to disqualify the law firms of Quarles & Brady LLP, counsel for defendant CropUSA Insurance Agency; Brown & McNichols P.A., counsel for defendant R. John Taylor; and Hawley Troxell, counsel for defendants AIA Services Corporation and AIA Insurance, Inc.

At that time, Mr. Riley was a member of the Hawley Troxell law firm. One of the stated grounds for disqualifying Hawley Troxell was that the motion for partial summary judgment "implicates Richard Riley and Hawley Troxell as witnesses." The motion also stated that Hawley Troxell and its attorneys "have been asserting arguments against Reed [Taylor] with full knowledge that such arguments are counter to an opinion letter issued on behalf of AIA Services to Reed, which was based upon knowledge held by Richard Riley who is also an attorney with Hawley Troxell."

In response to a letter from a Hawley Troxell attorney, counsel for Mr. Taylor stated in an e-mail sent on August 5, 2008: "Explain to Mr. [Merlyn] Clark how Richard Riley issued an opinion letter to Reed [Taylor] and you are now t[r]ying to disingenuously argue the $8.5 Million is not owed to him," and "Explain to Mr. Clark that even if the illegality argument had merit, Donna Taylor and Reed Taylor would be suing Hawley Troxell (and Richard Riley) in such an instance regardless of any circumstances."

On August 18, 2008, Mr. Taylor filed a lawsuit titled *Taylor v. Babbitt* against Hawley Troxell and three attorneys in that law firm, including Mr. Riley, and he filed a separate lawsuit titled *Taylor v. McNichols* against other counsel involved in *Taylor v. AIA Services Corporation*. The Defendants in those lawsuits filed motions to dismiss, and on December 23, 2008, the district court granted those motions. Mr. Taylor appealed, and the cases were consolidated for appeal. It was later recognized that there was no final judgment in the cases, and the cases were remanded for entry of final judgments. This Court received copies of the judgments on March 24, 2010, and it ultimately upheld the dismissal of the cases. *Taylor v. McNichols*, 149 Idaho

826, 243 P.3d 642 (2010). Mr. Riley bases his defense of res judicata on the final judgment entered in *Taylor v. Babbitt*.

While *Taylor v. Babbitt* was still pending, 401(k) Profit Sharing Plan of AIA Services Corporation moved on August 26, 2008, to intervene in *Taylor v. AIA Services Corporation*. On September 4, 2008, the profit sharing plan filed a copy of the answer it intended to file if the motion to intervene was granted. In that proposed answer, it asserted that the stock redemption was an illegal and unenforceable contract because it violated Idaho Code section 30-1-6 (1995). In support of its motion to intervene, it filed a supplemental brief on December 29, 2008, in which it argued that the stock redemption violated both Idaho Code sections 30-1-6 and 30-1-46 (1995).

Mr. Taylor filed a response on February 6, 2009. In it, he stated, "Significantly, the Plan's intervention involves asserting the same alleged 'illegality' defense which is already being asserted by the defense in virtually every pleading and motion." With respect to the legality of the stock redemption, Mr. Taylor asserted that Messrs. Riley and Turnbow had issued an opinion letter that did not disclose any violation of either Idaho Code section 30-1-6 or 30-1-46. Mr. Taylor's response was as follows:

> On August 15, 1995, an opinion letter was issued to Reed Taylor verifying many requirements had been met by AIA Services, including, without limitation, that the purchase of Reed Taylor's shares was a legal transaction and that shareholder approval was obtained. The opinion letter was based upon the knowledge of R.M. Turnbow and Richard Riley. The opinion letter makes no reference to any violations of I.C. § 30-1-46 or I.C. § 30-1-6, but instead merely contains the standard language contained in virtually any opinion letter that the enforceability of the documents could be effected [sic] by bankruptcy or insolvency.

(Citations to the record omitted.)

The Defendants who had raised the illegality of the stock redemption under section 30-1-46 submitted a supplemental memorandum on February 12, 2009, arguing that the redemption also violated section 30-1-6 (1995). On the same date, AIA Services Corporation and AIA Insurance, Inc., moved for summary judgment on the grounds that the stock redemption violated section 30-1-6, and John Taylor joined in the motion for partial summary judgment filed by the other Defendants. On June 17, 2009, the district court in *Taylor v. AIA Services Corporation*

8

held that the stock redemption agreement violated Idaho Code section 30-1-6 and that the agreement was therefore illegal and void.

Mr. Riley contends that the remaining claim brought against him in this lawsuit is barred by the judgment entered in *Taylor v. Babbitt*. Whether a prior adjudication bars a claim asserted in a subsequent lawsuit under the doctrine of res judicata is a question of law over which this Court exercises free review. *Andrus v. Nicholson*, 145 Idaho 774, 777, 186 P.3d 630, 633 (2008). Res judicata includes both claim preclusion (true res judicata) and issue preclusion (collateral estoppel). *Id.* "For claim preclusion to bar a subsequent action there are three requirements: (1) same parties; (2) same claim; and (3) final judgment." *Ticor Title Co. v. Stanion*, 144 Idaho 119, 124, 157 P.3d 613, 618 (2007). Two of the fundamental purposes served by the doctrine of res judicata are: (a) "[I]t serves the public interest in protecting the courts against the burdens of repetitious litigation" and (b) "[I]t advances the private interest in repose from the harassment of repetitive claims." *Id.* at 123, 157 P.3d at 617.

*(1) Same parties.* "[T]he doctrine of res judicata (claim preclusion) bars the presentation of the claim in a subsequent lawsuit between the same parties or their privies." *Devil Creek Ranch, Inc. v. Cedar Mesa Reservoir and Canal Co.*, 123 Idaho 634, 637, 851 P.2d 348, 351 (1993). Mr. Riley was a defendant in *Taylor v. Babbit* and is a defendant in this action, and both lawsuits were brought by Mr. Taylor. Therefore, the same-parties requirement is met.

*(2) Same claim.* "[T]he former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim, but also as to every matter which might and should have been litigated in the first suit." *Joyce v. Murphy Land & Irrigation Co.*, 35 Idaho 549, 553, 208 P. 241, 242–43 (1922). The prior adjudication "extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose." *Diamond v. Farmers Group, Inc.*, 119 Idaho 146, 150, 804 P.2d 319, 323 (1990).

In *Diamond*, the plaintiff, a private investigator, entered into a contract with a group of seven insurance companies to conduct all investigations that the companies assigned to outside investigators for a period of five years in an area that included Oregon, Idaho, Washington, Utah, and Montana. *Id.* at 147, 804 P.2d at 320. When a regional manager of the companies learned that the plaintiff had been hired, he told a home office manager in the company that he had previously fired the plaintiff for being a thief and wasting corporate money while performing

9

investigations. *Id*. During the ensuing couple of years, the plaintiff was given less investigatory work and then was terminated. *Id*. He filed suit in Idaho against the regional manager and the corporations alleging claims for defamation, interference with business relations, inducement of breach of contract, conspiracy, and the tort of outrage, and he sought to recover punitive damages. *Id*. Five days later, he brought a lawsuit in Oregon against the corporations alleging claims for breach of contract and fraud and seeking an award of punitive damages. *Id*. A default judgment as to liability was entered against the corporations in the Oregon lawsuit as a sanction for discovery violations, and the plaintiff recovered a judgment following an evidentiary hearing to determine the amount of damages. *Id*. The defendants in the Idaho case then moved for summary judgment, and the trial court dismissed the action against the corporate defendants under the doctrine of res judicata. *Id*. at 147-48, 804 P.2d at 320-21. We held that the judgment in the Oregon lawsuit barred the claims against the corporations in the Idaho lawsuit based upon the doctrine of res judicata. *Id*. at 151, 804 P.2d at 324. We held that all of the plaintiff's claims arose out of the same transaction or series of transactions in that the slanderous statements were the direct basis for the claims asserted in the Idaho lawsuit and were significant factors in the corporate defendants' later actions of gradually curtailing the investigations assigned to him, which eventually led to his termination. *Id*. We held that the allegedly slanderous statements were part of the same transaction or series of transactions that gave rise to both lawsuits because they were "the subject of the Idaho action, were necessarily involved in the Oregon action, and were part of the same operative facts in the Oregon action." *Id*. (citations omitted).

In this case, the district court held that the remaining claim made in this lawsuit was not the same claim made in *Taylor v. Babbitt*. It stated: "The claim originates in Turnbow's and Riley's alleged malpractice in drafting the 1995 opinion letter. This is wholly unrelated to the alleged conduct in *Babbitt*." According to the district court, "The opinion letter was not central, or even important, in the outcome in *Babbitt*." The court also found important that had *Taylor v. Babbitt* gone to trial, the evidence "would focus on the events in 2007 and 2008 regarding Taylor's suit against AIA and the steps AIA took to defend that suit," while in this case a trial "will be focused on the events surrounding the negotiation of the stock redemption and issuance of the opinion letter." The district court erred in its analysis of what constitutes the same claim.

The issue is not simply whether the two lawsuits involve the identical claim. "A cause of action can be barred by a prior adjudication even though the theory of liability and supporting

10

evidence differ from the cause of action actually litigated in the prior lawsuit." *Andrus*, 145 Idaho at 777, 186 P.3d at 633. The issue is whether both lawsuits arose out of the same transaction or series of transactions.

The basis of Mr. Taylor's alleged claims in *Taylor v. Babbitt* was his failure to be paid the sums owing for the redemption of his stock due, in part, to the conduct of the Defendants in representing their respective clients. He sought to recover damages against the Defendants based upon their conduct that allegedly prevented him from obtaining the sums he was due under the $6 million promissory note. In stating the general facts upon which his claims were based, Mr. Taylor began by alleging:

> 11. At all material times, Plaintiff Reed J. Taylor was owed over $6,000,000 by AIA Services Corporation through a promissory note dated August 1, 1995. Plaintiff Reed J. Taylor is presently owed over $8,500,000 by AIA Services Corporation. At all material times, the Defendants had full knowledge of AIA Services Corporation's debt and contractual obligations owed to Reed J. Taylor.
>
> 12. AIA Services Corporation was in default of the $6,000,000 promissory note when it failed to pay the note when it matured on August 1, 2005. Although unnecessary since the $6,000,000 promissory note matured on August 1, 2005, demand for payment was properly served upon AIA Services Corporation by Plaintiff Reed J. Taylor on December 12, 2006, a copy of which was also provided to Defendant Richard A. Riley pursuant to the notice provisions of the agreements. AIA Services Corporation was insolvent in 2001, and has continued to be insolvent from said date.

Mr. Taylor alleged that after he had filed *Taylor v. AIA Services Corporation* to recover the sums he was owed, the Defendants, including Mr. Riley, took various actions which thwarted his attempts to recover the sums to which he was entitled under the stock redemption agreement. Those alleged actions included assisting in stopping payments owing under the stock redemption agreement; participating in a joint defense agreement, which their clients entered into with other defendants; obtaining and maintaining a restraining order and preliminary injunction that prevented him from voting the stock of AIA Insurance, Inc., in which he had a security interest to secure payment of the sums due under the stock redemption agreement; and taking actions that caused the values of the two corporations to plummet, to the detriment of Mr. Taylor as the major creditor.

11

In addition to those claims, Mr. Taylor alleged with respect to Mr. Riley specifically that he had issued the opinion letter relating to the stock redemption agreement and later took a contrary position regarding its legality. The complaint alleged:

> 53. The Defendants were fully aware of Reed J. Taylor's rights to property in which he held a security interest and was pledged to him as collateral. In fact, Defendant Richard A. Riley represented AIA Services Corporation in the redemption of Reed J. Taylor's shares and the drafting of the Amended and Restated Stock Pledge Agreement and other applicable agreements. Defendants were responsible for issuing opinion letters relating to the transaction, which include various applicable representations and warranties. Defendants are now asserting arguments counter to the representations made in the opinion letter drafted by Defendants by and through Defendant Richard A. Riley.

The allegations continued with respect to all Defendants, including Mr. Riley:

> 56. The Defendants' conduct constitutes the willful interference with property and money belonging to AIA Services Corporation, AIA Insurance, Inc. and/or Reed J. Taylor and/or which such property and money should be under the possession and/or control of Reed J. Taylor, as the person entitled to such money and property as a creditor and pledgee. The Defendants deprived Reed J. Taylor possession of such property and money. Despite Reed J. Taylor's demands, the Defendants have refused to return such property and money.
> . . . .
> 64. The Defendants' acts constitute professional negligence and/or breach of the Defendants' fiduciary duties, and such conduct has damaged the corporations and Reed J. Taylor, in an amount to be proven at trial or on summary judgment.

In the instant case, Mr. Taylor is also seeking to recover damages for Mr. Riley's allegedly negligent conduct that prevented Mr. Taylor from being able to recover the sums he was due for the redemption of his stock. He is simply alleging a different theory of liability. At the time Mr. Taylor filed *Taylor v. Babbitt*, on August 18, 2008, he had a cause of action against Mr. Riley for his alleged negligence in issuing the opinion letter. As the district court held, Mr. Taylor's cause of action against Mr. Riley based upon the issuance of the opinion letter accrued in April 2008 when he was required to incur attorney fees to counter the claim that the stock redemption agreement was an illegal contract. However, in *Taylor v. Babbitt*, Mr. Taylor did not seek to recover against Mr. Riley for negligently failing to disclose in the opinion letter that the stock redemption agreement was an illegal contract. Rather, Mr. Taylor sued Mr. Riley for failing to agree with his statements in the opinion letter.

12

Thus, in both *Taylor v. Babbitt* and in this case, Mr. Taylor sued Mr. Riley to recover damages allegedly caused by Mr. Riley's wrongful conduct that prevented Mr. Taylor from recovering the sums due to him for the redemption of his stock. In *Taylor v. Babbitt*, Mr. Taylor alleged various wrongful actions by Mr. Riley, including his conduct in "asserting arguments counter to the representations [he] made in the opinion letter." In this case, he is asserting that Mr. Riley negligently issued the opinion letter. The cause of action based upon the issuance of the opinion letter and the cause of action for taking a position contrary to the statements in the opinion letter arose at about the same time and out of the same transaction or series of transactions.

A subsequent lawsuit is not a different claim merely because the plaintiff seeks the same result under a different theory of liability. Under the doctrine of res judicata, claim preclusion is not limited to the theories that were actually litigated in the prior lawsuit. *Andrus*, 145 Idaho at 777, 186 P.3d at 633. In *Andrus*, we held that a prior lawsuit dismissing with prejudice the plaintiffs' claim that they had a statutory right to use roads crossing the defendants' property in order to access mining claims barred a subsequent lawsuit to condemn a road across the same defendants' property. 145 Idaho at 777-78, 186 P.3d at 633-34. We held that the second lawsuit was simply another theory under which the plaintiffs were attempting to obtain the same relief they sought in the first lawsuit—the right to use roads across the defendants' property. *Id*. at 778, 186 P.3d at 634.

In *Taylor v. Babbitt*, Mr. Taylor asserted the right to recover damages from Mr. Riley, in part, because his assertion that the stock redemption agreement was void was contrary to his representations in the opinion letter. In this case, Mr. Taylor seeks to recover damages from Mr. Riley because the invalidity of the stock redemption agreement was not set forth in the opinion letter. In both cases, Mr. Taylor seeks damages for the same basic wrong—his inability to recover the sums owing for the redemption of his stock. Although Mr. Taylor also raised many other claims in the 26-page complaint in *Taylor v. Babbitt* that were unrelated to the opinion letter, that does not preclude the finding that the current lawsuit arose out the same transaction or series of transactions as a claim asserted in *Taylor v. Babbitt*.

Having chosen to bring that lawsuit, Mr. Taylor was required to raise every matter which might and should have been litigated in that suit, which would include the claim that Mr. Riley negligently issued the opinion letter. The doctrine of res judicata reflects the expectation "that

13

entire controversies will be presented and that all relevant material will be produced." *Ramseyer v. Ramseyer*, 98 Idaho 554, 556, 569 P.2d 358, 360 (1977). When Mr. Taylor chose to sue Mr. Riley for failing to defend his statements in the opinion letter indicating that the stock redemption agreement was valid, Mr. Taylor was also required to sue Mr. Riley for negligently failing to state in the opinion letter that the agreement was not valid. "A party may set forth two or more statements of a claim or defense alternatively or hypothetically . . . ." I.R.C.P. 8(e)(2).

The district court in this case stated that the "gravamen" of Mr. Taylor's complaint in *Taylor v. Babbitt* was torts allegedly committed by the defendants in that action to deprive Mr. Taylor of money and property to which he was entitled in 2007, and at that time he believed that the stock redemption agreement was enforceable. The complaint alleged numerous claims against Mr. Riley, but the issue is not what was the substantial point or essence of the claim. The issue is whether the lawsuit included any claim that arose out of the same transaction or series of transactions as the claim asserted in this case. In applying the doctrine of res judicata, it does not matter that the claim against Mr. Riley based upon his failure to defend his opinion letter was patently frivolous, nor does it matter that it was only a minor part of the *Taylor v. Babbitt* lawsuit. The fundamental purposes served by the doctrine of res judicata are not based upon the merits of the claim asserted in the prior litigation or whether it was the primary claim asserted.

*(3) Final judgment.* "For claim preclusion to apply, the prior judgment must be a valid final judgment rendered on the merits." *Andrus*, 145 Idaho at 778, 186 P.3d at 634. In *Taylor v. Babbitt*, the district court had jurisdiction over the parties and the subject of the litigation, and it entered a final judgment dismissing Mr. Taylor's complaint with prejudice. Mr. Taylor contends that there was no final judgment in *Taylor v. Babbitt* because his claims were not dismissed on the merits. They were dismissed because they were not yet ripe for review due to the litigation privilege. That assertion is incorrect.

In that case, we did hold that a claim presumptively barred by the litigation privilege could not be brought until the litigation was completed. We stated:

> Therefore, we conclude that a cause of action against one party's opponent's attorney in litigation, based on conduct the attorney committed in the course of that litigation, may not be properly instituted prior to the resolution of that litigation, even where the allegedly aggrieved party believes that the attorney in question has been acting outside the legitimate scope of representation and solely for his own benefit.

14

*Taylor v. McNichols*, 149 Idaho at 843, 243 P.3d at 659.

However, the claims in *Taylor v. Babbitt* that were raised and addressed on appeal were dismissed on the merits. They were civil conspiracy, interference with contract, legal malpractice, breach of fiduciary duty, violations of the Idaho consumer protection act, and conversion. *Id.* at 843-47, 243 P.3d at 659-63. In upholding the district court's award of attorney fees under Idaho Code section 12-121, we stated: "[A]s may be seen from the foregoing analysis, even without taking the litigation privilege into consideration, the district court's decision to grant the 12(b)(6) motions to dismiss would be affirmed. This is because these claims were brought frivolously, unreasonably, and without foundation." *Id.* at 848, 243 P.3d at 664.

The dismissal of Mr. Taylor's claims in *Taylor v. Babbitt* was an involuntary dismissal. Rule 41(b) of the Idaho Rules of Civil Procedure provides, "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." The judgment in *Taylor v. Babbitt*, stated: "The Court, having entered an Order on December 23, 2008 granting Defendants' Motion to Dismiss, IT IS HEREBY THE JUDGMENT OF THE COURT that Plaintiff Reed J. Taylor's Amended Complaint is DISMISSED in its entirety." "An involuntary dismissal pursuant to I.R.C.P. 41(b), is a judgment on the merits against the plaintiff . . . ." *Morris v. Frandsen*, 101 Idaho 778, 780, 621 P.2d 394, 396 (1980); *accord* 47 Am. Jur. 2d *Judgments* § 563 (2006); I.R.C.P. 41(b).

Mr. Taylor's claims in this lawsuit against Mr. Riley are barred by the judgment entered in favor of Mr. Riley in *Taylor v. Babbitt*. The district court erred in denying Mr. Riley's motion to dismiss based upon the doctrine of res judicata. Therefore, we need not address the remaining issues raised by Mr. Riley on this appeal.

**b. Res judicata as to the Estate of Robert M. Turnbow and Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered.** Estate of Robert M. Turnbow and Eberle Berlin both contend that they are also entitled to dismissal under the doctrine of res judicata. "In order for claim preclusion to apply, both proceedings must involve the same parties or their privies. To be privies, a person not a party to the former action must 'derive[ ] his interest from one who was a

party to it, that is, . . . he [must be] in privity with a party to that judgment.'" *Ticor Title*, 144 Idaho at 124, 157 P.3d at 618 (citations omitted).

Because the claim against Mr. Riley is barred by the doctrine of res judicata, Eberle Berlin cannot be held liable for his alleged negligence. 47 Am. Jur. 2d *Judgments* § 614 (2006). The Estate and Eberle Berlin ask us to extend the concept of privity to also hold that the claim against them based upon Mr. Turnbow's alleged negligence is also barred by res judicata. They assert, "Courts will often bind a non-party whose interests were represented adequately by a party in the original suit."

In *Berkshire Investments, LLC v. Taylor*, 153 Idaho 73, 278 P.3d 943 (2012), the losing defendants in prior litigation sued the plaintiffs in that litigation, the attorneys who represented the plaintiffs, and the attorneys' law firm seeking to relitigate the same issue decided in the prior litigation, and we held that the attorneys were in privity with their clients for the purpose of raising the defense of res judicata. *Id*. at 77-78, 278 P.3d at 947-48. In so holding, we stated:

> Here, although [the law firm] was not a party to the prior action, the district court was correct in determining that the attorneys were in privity with their clients, the Taylors and the Trust, who were parties to that action. As the district court noted, their only interest in the present action arose from their representation of their clients in the former action, and they were named solely for their alleged conduct in that capacity.

*Id.* at 81, 278 P.3d at 951.

The claim against the Estate and Eberle Berlin in this case is not based upon Mr. Turnbow's representation of any party in prior litigation with Mr. Riley. It is based solely upon his issuance of the opinion letter.

The Estate and Eberle Berlin cite *Brunacini v. Kavanagh*, 869 P.2d 821 (N.M. App. 1993), for the proposition that they should be held to be in privity with Mr. Riley for the purposes of the defense of res judicata, but that case is inapposite. There, an attorney issued a letter advising his clients that an employment contract was not enforceable against them. *Id*. at 822. Based upon that advice, they terminated the employment of a third party. *Id*. That party sued for breach of contract and obtained a judgment for damages. *Id*. The attorney's law firm, which had unsuccessfully defended the breach-of-contract action, then sued the clients to collect its attorney fees. *Id*. The clients retained new counsel, and the law firm and its then former clients stipulated to a judgment settling that lawsuit. *Id*. About four and one-half months later,

the former clients brought a malpractice action against one of the members of the law firm for negligently advising the clients that the contract upon which the clients were successfully sued was not enforceable. *Id*. The appellate court held that the malpractice claim was a compulsory counterclaim in the law firm's lawsuit to recover its attorney fees; that the attorney, although not a party to the lawsuit, was in privity with the law firm; and that the malpractice lawsuit was barred by the clients' failure to assert it as a counterclaim in the law firm's action to recover its attorney fees. *Id*. at 825.

In the instant case, Mr. Riley was not a member of Eberle Berlin when he was sued in *Taylor v. Babbitt*, nor had he been a member of that firm since March 1, 1999. The claims brought in that case did not involve his conduct while he was a member of Eberle Berlin. The doctrine of res judicata bars this action against him because this claim should have been brought in *Taylor v. Babbitt*. The *Brunacini* case does not support the contention that either the Estate or Eberle Berlin was in privity with Mr. Riley either when he was sued in *Taylor v. Babbitt* or with respect to the claims brought against him in that case. Therefore, the doctrine of res judicata does not bar the claims that Mr. Taylor may have against the Estate or Eberle Berlin.

## IV.
## Did the District Court Err in Rejecting the Argument that the Opinion Letter Could Not, as a Matter of Law, Have Been the Proximate Cause of Any Damages?

The Estate and Eberle Berlin contend that the opinion letter could not have been the proximate cause of any damages because of the Stock Redemption Restructure Agreement that Mr. Taylor and AIA Services Corporation executed in 1996 (1996 Agreement). They assert that "the 1996 Stock Redemption Restructure Agreement expressly provided that the 1996 Stock Redemption Restructure Agreement 'superseded all other agreements.'" That statement is inaccurate. As part of the 1995 stock redemption transaction, the parties executed the Stock Redemption Agreement, the $1.5 million promissory note, the $6 million promissory note, a Stock Pledge Agreement, a Security Agreement, a Consulting Agreement, and a Noncompetition Agreement. The 1996 Agreement did not undo the stock redemption. It expressly stated that "[t]he parties now wish to *restructure the stock redemption transaction*" by altering the terms of the $1.5 million note; terminating the Consulting Agreement; revising the Noncompetition Agreement; terminating the corporation's obligation to pay Mr. Taylor a monthly salary; revising

17

certain representations, warranties, and covenants in the Stock Redemption Agreement; and changing various default provisions and remedies. (Emphasis added.)

Therefore, pursuant to the 1996 Agreement, the parties entered into an amended $1.5 million promissory note, an Amended and Restated Security Agreement, an Amended and Restated Stock Pledge Agreement, and an Amended and Restated Noncompetition Agreement, and they terminated the Consulting Agreement. The 1996 Agreement stated that it was only the "Superseded Documents" (the Stock Redemption Agreement, the $1.5 million note, the Security Agreement, the Stock Pledge Agreement, the Consulting Agreement, and the Noncompetition Agreement) which were "of no further force or effect." It did not undo the stock redemption transaction.

The Amended and Restated Security Agreement and the Amended and Restated Stock Pledge Agreement both recited that AIA Services Corporation and Mr. Taylor "are parties to that certain Stock Redemption Agreement dated as July 22, 1995 (the 'Redemption Agreement'), pursuant to which Company redeemed 613,494 shares of its Common Stock held by [Mr. Taylor] in exchange for, in part, . . . a promissory note in the principal amount of $6,000,000 (the '$6M Note')," and the Amended and Restated Security Agreement and the Amended and Restated Stock Pledge Agreement both stated that they were given to secure payment of the "$6M Note." Under the 1996 Agreement, Mr. Taylor did not receive his stock back, and the corporation was still obligated to pay the $6 million promissory note that it gave him as part consideration for the redemption of his stock.

The Estate and Eberle Berlin argue that "the 1996 Stock Redemption Restructure Agreement required that Taylor waive any claim to default under 1995 Stock Redemption Agreement and forbear from exercising any remedies he may have had for any such default." The 1996 Agreement included a provision stating, "Creditor [Mr. Taylor] hereby waives any and all defaults alleged in the Notice of Default or which could have been alleged under the Original Documents prior to the effective date of this Agreement, and further agrees to forbear from exercising any remedy he may have had for any such default under the Original Documents." Waiving any previously claimed defaults does not constitute waiving any right to recover for future defaults in payment of sums owed under either the $1.5 million promissory note or the $6 million promissory note.

18

The Estate and Eberle Berlin argue that some of the terms of repayment of the promissory note were changed by the 1996 Agreement. They assert that "despite the ongoing agreement that AIA had an obligation to pay Taylor, the actual wording and terms of the August 1, 1995 promissory note, in its entirety, cannot be deemed to be in force and in effect in the 1996 Stock Redemption Agreement." The argument is that the $6 million promissory note stated that it "is secured by the Stock Pledge Agreement by and between AIA and Payee, and by the Security Agreement by and between AIA and Payee, each of even date herewith," but pursuant to the 1996 Agreement, the Stock Pledge Agreement and the Security Agreement were superseded by the Amended and Restated Stock Pledge Agreement and the Amended and Restated Security Agreement, both of which contain terms that differ from the documents they replaced. The Estate and Eberle Berlin also argue that the $6 million note included a provision stating that it "may not be prepaid in whole or in part without the prior written consent of Payee," while the Amended and Restated Stock Pledge Agreement provides that "Pledgor shall have the right, throughout the remaining term of the $6M Note, to prepay all or part of the outstanding balance of principal and accrued but unpaid interest without premium or penalty." Finally, the Estate and Eberle Berlin argue that the corporation and Mr. Taylor's former wife entered into an agreement reamortizing the redemption period for her preferred stock. They conclude by stating that "the terms set forth in the August 1, 1995 promissory note did not continue in its entirety in the 1996 Stock Redemption Restructure Agreement, without any change." What they fail to argue is that the changes are in any way material to the legality of the stock redemption transaction. There is no assertion or argument that the stock redemption transaction was legal when the parties entered into it and became illegal only because of the changes made by the 1996 Agreement. Likewise, they do not contend that Mr. Taylor became aware of the illegality of the stock redemption prior to the execution of the 1996 Agreement and its related documents.

The Estate and Eberle Berlin argue that "[n]either Judge Brudie nor the Supreme Court expressly held that August 1, 1995 promissory note was an 'illegal contract' in *AIA* [*Taylor v. AIA Services Corporation*]." The Estate and Eberle Berlin do not provide any authority or argument supporting their contention that although a contract is held to be illegal and void, a promissory note given as consideration for that contract is still enforceable. Their argument is also contrary to the facts.

19

In its judgment, the district court dismissed Mr. Taylor's First Cause of Action, which alleged a breach of contract for failure to pay the $6 million promissory note; his Fourth Cause of Action, which alleged the conversion of property in which he had a security interest for payment of the promissory note; his Eighth Cause of Action, which sought specific performance to require compliance with the provisions of the $6 million promissory note; and his Tenth Cause of Action, which alleged a breach of the implied covenant of good faith and fair dealing for failing to comply with the terms and conditions of the $6 million promissory note. The Estate and Eberle Berlin fail to explain why the $6 million promissory note would still be enforceable after the entry of a final judgment dismissing these claims.

In addition, the Estate and Eberle Berlin fail to address the fact that the district court "declared the Stock Redemption Agreement illegal and unenforceable and concluded that it must leave the parties where it finds them." *Taylor v. AIA Services Corp.*, 151 Idaho at 558, 261 P.3d at 835. The Stock Redemption Agreement expressly stated that the "consideration to be paid by Company in full consideration for the redemption of the Shares" included "Six Million Dollars ($6,000,000) payable pursuant to the terms of a promissory note to be delivered by Company at Closing." The Stock Redemption Restructure Agreement recited that "all of Creditor's shares of common stock of Company were redeemed" and that the $6 million promissory note would continue as an obligation of the corporation. We affirmed the holding of the district court that the parties must be left as they were, *id.* at 564-67, 261 P.3d at 841-44, and we stated, "If a contract is illegal and void, the court will leave the parties as it finds them and refuse to enforce the contract." *Id.* at 565, 21 P.3d at 842. Leaving the parties as the court finds them means that the court will not enforce either the illegal contract or any alleged rights directly springing from such contract. As we stated in *Clark v. Utah Construction Co.*, 51 Idaho 587, 8 P.2d 454 (1932):

> The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract. In cases of this kind the maxim is, 'Potior est conditio defendentis [Better is the condition of the defendant, than that of the plaintiff].'

*Id*. at 603, 8 P.2d at 460 (quoting *McMullen v. Hoffman*, 174 U.S. 639, 654 (1899)).

Thus, with respect to the payment of the remaining sums due to Mr. Taylor, we stated:

20

> To the extent that not enforcing the agreement seems harsh given that AIA Services is trying to get out of an agreement it chose to enter into and given that it appears that none of the parties recognized the potential violation of I.C. § 30-1-6, it must be noted that Reed Taylor has already received substantial sums of money from AIA Services pursuant to the agreement.

*Taylor v. AIA Services Corp.*, 151 Idaho at 567, 261 P.3d at 844. Leaving the parties as they were found meant that Mr. Taylor could keep what he had been paid for his stock, but he could not recover any more of the purchase price.

Finally, the Estate and Eberle Berlin contend that any damages suffered by Mr. Taylor were caused by the subordination agreement contained in the 1996 Agreement. In order to effectuate a division of community property in the 1987 divorce action between Mr. Taylor and his wife, the Articles of Incorporation of AIA Services Corporation were amended to provide for the issuance of Series A Preferred Stock and to give the holder of that stock the right to have the corporation redeem it. The stock was then issued to Mr. Taylor's ex-wife, who was the sole holder of Series A Preferred Stock. In connection with the 1996 Agreement, Mr. Taylor agreed that payment of the principal on the $6 million note would be subordinated to the payment in full of the corporation's obligation to redeem the Series A Preferred Stock. When Mr. Taylor and his former wife entered into that subordination agreement, the corporation had redeemed 38,401 of her shares of stock, and it was obligated to pay her $1,615,990 for the redemption of her remaining 161,599 shares. Later, Mr. Taylor and his ex-wife entered into an agreement dated December 1, 2006, under which she agreed to subordinate any payments owing to her for the redemption of her Series A Preferred Stock to all sums owing to Mr. Taylor from any entity, specifically including the sums owing to him under the $6 million promissory note. After considering these facts, the district court in *Taylor v. AIA Services Corporation* granted Mr. Taylor's motion for partial summary judgment that he was entitled to recover the $6 million of principal owed under the promissory note. The court later addressed the motion for partial summary judgment regarding the illegality of the stock redemption transaction and ruled that the transaction was illegal in violation of Idaho Code section 30-1-6 and that Mr. Taylor could not recover anything under that transaction.

The Estate and Eberle Berlin contend that "any damages incurred by Taylor were proximately caused by his own action of executing the subordination agreement, as opposed to any conduct of Attorneys Riley and Turnbow in 1995." Other than making that assertion, the

Estate and Eberle Berlin do not explain how he did not suffer any damages from his alleged reliance upon the opinion letter.

## V.
### Did the District Court Err in Holding that Mr. Turnbow Owed a Duty to Mr. Taylor, a Nonclient?

"As a general rule, an attorney will be held liable for negligence only to his or her client and not to someone with whom the attorney does not have an attorney-client relationship." *Harrigfeld v. Hancock*, 140 Idaho 134, 137, 90 P.3d 884, 887 (2004). "No liability arises from the law of torts unless the defendant owes a duty to the plaintiff." *Udy v. Custer County*, 136 Idaho 386, 389, 34 P.3d 1069, 1072 (2001). "If one voluntarily undertakes to perform an act, having no prior duty to do so, the duty arises to perform the act in a non-negligent manner." *Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843, 875 P.2d 937, 940 (1994). In *Cumis Insurance Society, Inc. v. Massey*, 155 Idaho 942, 318 P.3d 932 (2014), we held that a real estate appraiser could be liable to a nonclient where the appraiser's report stated that certain categories of nonclients could rely upon the appraisal. *Id*. at 948, 318 P.3d at 938. Homeowners had sought a real estate loan from a prospective lender, who hired the appraiser. *Id*. at 944, 318 P.3d at 934. He determined that the market value of the property was $1,150,000. *Id*. The prospective lender decided not to make a loan, and the homeowners sought a loan from another lender. *Id*. at 944-45, 318 P.3d at 934-35. That lender relied upon the appraisal in loaning the homeowners $250,000 and taking a deed of trust on the property as security. *Id*. at 945, 318 P.3d at 935. The homeowners defaulted on the loan, and the lender had the property reappraised, which showed that on the date of the initial appraisal, the property had a market value of $652,000, not $1,150,000. *Id*. The initial appraiser's report contained a certification stating, "The borrower, another lender at the request of the borrower . . . may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties." *Id*. at 948, 318 P.3d at 938. In holding that the initial appraiser could be held liable to the lender, a nonclient, we stated as follows: "By the latter certification, [the initial appraiser] assumed a duty of care to those whom he expressly identified as being able to rely on the report, as it was reasonably foreseeable that the certification would lead such parties to rely upon [the initial appraiser] to perform his appraisal in a non-negligent fashion." *Id*.

There is no reason why the same rule should not apply to attorneys. An attorney can voluntarily assume a duty to a nonclient just as can an appraiser. The opinion letter was addressed to Mr. Taylor, and the last sentence of the letter stated as follows, "This opinion is furnished by us solely for your benefit for use in connection with the Transaction Documents and the transactions contemplated thereby; and it may not be furnished or quoted to, or relied upon, by any other person." The letter expressly stated that Mr. Taylor could rely upon the opinions stated in the letter. Where Mr. Turnbow voluntarily undertook to issue the opinion letter and stated that Mr. Taylor could rely upon it, Mr. Turnbow had a duty of care to Mr. Taylor. The district court did not err in so holding. We express no opinion either on whether Mr. Turnbow failed to exercise due care or, if so, on the amount of damages recoverable.

## VI.
### Is Any Party Entitled to an Award of Attorney Fees on Appeal?

Mr. Riley, the Estate and Eberle Berlin, and Mr. Taylor all seek an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3). They each argue that this is an action to recover in a commercial transaction. Idaho Code section 12-120(3) provides that "[i]n any civil action to recover . . . in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." A "commercial transaction" is defined as "all transactions except transactions for personal or household purposes." I.C. § 12-120(3). The opinion letter qualifies as a commercial transaction between Messrs. Riley and Turnbow on one side and Mr. Taylor on the other. An action seeking to recover damages for legal malpractice is an action to recover in a commercial transaction where the legal services were not rendered for personal or household purposes. *City of McCall v. Buxton*, 146 Idaho 656, 665, 201 P.3d 629, 638 (2009).

Mr. Riley is the prevailing party in this litigation because he is entitled to have the claim against him dismissed with prejudice. Therefore, we award him attorney fees on appeal under Idaho Code section 12-120(3), and on remand the district court can determine the amount to award for the proceedings in the district court.

We do not yet know who will be the prevailing party in Mr. Taylor's action against the Estate and Eberle Berlin. Therefore, once the prevailing party is determined, the district court is to include an award of attorney fees for this appeal in its award of attorney fees to the prevailing

23

party. *Hillside Landscape Constr., Inc. v. City of Lewiston*, 151 Idaho 749, 754, 264 P.3d 388, 393 (2011).

## VIII.
### Conclusion.

We reverse the decision of the district court to the extent that it holds that Mr. Taylor's claim against Mr. Riley is not barred by res judicata. We award Mr. Riley costs and attorney fees on appeal, and direct the district court to award him attorney fees for the proceedings in the district court.

We affirm the decision of the district court that Mr. Taylor's claim against the Estate and Eberle Berlin is not barred by res judicata; that Mr. Turnbow owed a duty of care to Mr. Taylor in issuing the opinion letter; and that the 1996 Agreement did not constitute a waiver of Mr. Taylor's claim for legal malpractice, nor did it preclude a finding that the alleged negligence of Mr. Turnbow was the proximate cause of any damages suffered by Mr. Taylor. We award Mr. Taylor costs on appeal against the Estate and Eberle Berlin, and we direct the district court to include an award of attorney fees for the appeal in its award of attorney fees to the prevailing party.

Chief Justice BURDICK, and Justices Pro Tem SCHROEDER and KIDWELL **CONCUR.**

J. JONES, Justice, specially concurring.

I concur in the Court's opinion but wish to make some personal observations with regard to the holding in Part V that an attorney may face liability for representations made in an opinion letter to a nonclient contracting party. While the holding extends potential liability to an arena where it may not have previously existed, I do not see the opinion as having wide-ranging application to attorney opinion letters.

During my years of private practice, I was occasionally called upon to sign an opinion letter that made legal representations to a party with whom my client was entering into some sort of transaction. This generally involved lending institutions that required the borrower's attorney to sign an opinion letter making representations as to the borrower's valid existence, its ability to

legally execute the transaction documents, the priority of the lender's mortgage or deed of trust, the absence of undisclosed claims against the borrower and the like. Generally, the contents of the opinion letter were not negotiable, which left the attorney with a dilemma—sign the letter, as is, so that the transaction could proceed, or refuse to sign and potentially jeopardize the client-borrower's loan or other transaction.

Although I was never pressured by a client to make representations in an opinion letter that caused me discomfort, I could certainly see that potentiality where the client is desperate for the transaction and the transaction is contingent upon the opinion letter. Where the client is the party benefitted by the transaction, it does not seem that the attorney under those circumstances should solely bear the consequences for any improvident representations. Generally, the attorney making the representations in the opinion letter may be compensated by his client for the work entailed but, while the client may receive consideration from the other contracting party in the transaction, the attorney is in a position of making representations to that party to facilitate the transaction, while receiving no consideration from that other party. So, where the party may place reliance on representations in the opinion letter, the attorney may incur substantial liability without much to show in the way of compensation for his or her opinions.

A further observation might be made regarding a represented contracting party's reliance on representations made by the other party's attorney. Presumably, the party seeking the opinion letter should also be getting and relying upon the advice of his or her own counsel. After all, there is a confidential and fiduciary relationship between the two and one would hope that the party requesting the opinion letter would not be relying solely upon it, especially for factual matters that may be within the knowledge of that party and his or her counsel. One might wonder whether Taylor was advised by his own counsel that a cursory review of the corporate books indicated the existence of no earned surplus and that the corporate documents did not authorize the use of capital surplus for the transaction. Those books and documents were apparently under Taylor's control until the signatures on the transaction documents were inked. This may or may not be relevant to the issue, but it does provide some interesting food for thought.

Speaking solely for myself, I think the imposition of liability based on representations in an opinion letter would be more likely where: (1) the terms of the opinion letter are negotiable such that the opining attorney has a say in fashioning the representations and is not operating in a take-it-or-leave-it situation, (2) the party to whom the letter is addressed makes full disclosure of

its objectives in the transaction and the means for accomplishing the same, and (3) any pertinent facts that may have an important bearing on the opining lawyer's client's ability to perform its obligations under the transaction documents are disclosed and not withheld.

When the facts are all known to the opining attorney, such as where all potential concerns are within the control of his or her own client, the chances for liability exposure are limited. Where, however, as in this case, important facts are within the knowledge or under the control of the party seeking the opinion, chances for a misstep are substantially increased.

In this case, the record appears to indicate that the terms of the opinion letter were negotiated between the opining lawyers and Taylor. That issue should certainly be explored on remand. On the other hand, it is not entirely clear whether the opining lawyers were made aware of pertinent facts that had a bearing on the legality of the Stock Redemption Agreement. That contract was not declared by this Court to be illegal per se but, rather, to be illegal based upon the factual situation present in the case. *Taylor v. AIA Services Corp.*, 151 Idaho 552, 565, 261 P.3d 829, 842 (2011). We said:

> Idaho Code § 30-1-6 authorizes a corporation to purchase its own shares but limits the corporation to using only earned surplus and, if authorized, capital surplus to make the purchase. Because AIA Services had no earned surplus and was not authorized to use capital surplus when it agreed to purchase Reed Taylor's shares, the Stock Redemption Agreement violated the earned and capital surplus limitations of I.C.§ 30-1-6. Based upon a review of the policy for the statute and the facts in this case, the Stock Redemption Agreement is thereby prohibited by law and is illegal.

*Id.* Presumably, had AIA Services possessed adequate earned surplus to meet its obligations to Taylor under the Stock Redemption Agreement, a different result may have obtained. Of interest in this regard is Taylor's argument in that case:

> Reed Taylor argues that the district court erred when it failed to consider the fair market value of AIA Services and asserts that the following evidence shows that AIA Services had sufficient earned surplus to redeem his shares: (1) appraisals from 1995 and 1996 that value a minority interest in AIA Services at $2 million and $4 million respectively; (2) a 1994 appraisal valuing the whole company of over $19 million; (3) Reed Taylor's valuation of the commissions and contractual relationships held by AIA Services at over $24 million in 1995; and (4) AIA Services' projection of substantial earnings upon redeeming Reed Taylor's shares and redirecting the company.

151 Idaho at 560, 261 P.3d at 837. While these arguments were determined to be specious and of no avail regarding the issue of earned surplus, if those arguments were communicated by Taylor

to the opining attorneys or if information to the contrary was withheld from them, it may have bearing both upon the opining attorneys' liability and Taylor's reliance on representations that the transaction documents were sufficient to accomplish the purchase of the shares.

The foregoing is not intended as a comprehensive review of the opinion letter issue but, rather, an indication of some of the issues that might be subject to exploration in further proceedings on remand.